No. 60,466

STATE OF KANSAS, *Appellant,* v. JERRY A. ADEE, *Appellee.*

(740 P.2d 611)

Opinion filed July 17, 1987.

*John McNish,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellant.

*Robert L. Pottroff,* of Myers & Pottroff, of Manhattan, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is an appeal by the State upon a question reserved as authorized by K.S.A. 22-3602(b)(3). At issue is the propriety of a district court ruling that K.S.A. 1986 Supp. 8-1001(g) does not permit a law enforcement officer to obtain a search warrant for a blood sample of a person arrested for driving under the influence of alcohol (K.S.A. 1986 Supp. 8-1567) over the person's refusal to submit to alcohol concentration testing.

The facts are not in dispute and may be summarized as follows. On July 14, 1986, Jerry A. Adee was arrested in Abilene for driving under the influence of alcohol in violation of K.S.A. 1986 Supp. 8-1567.

The arresting officer, Officer Ira R. Duer of the Abilene Police Department, requested Adee to take a breath test to determine the alcohol concentration of his blood. Adee refused. After

Adee's refusal, Officer Duer obtained a search warrant from District Magistrate Judge James W. Davis. Adee was taken to an Abilene hospital for the purpose of the execution of the warrant—namely, the obtaining of a blood sample from Adee. At the hospital, Officer Duer handed a copy of the warrant to Adee and requested Adee's cooperation. Adee refused. There was no further effort to execute the search warrant. Adee was charged with the additional count of obstructing legal process in violation of K.S.A. 21-3808.

On August 13, 1986, defendant was tried before District Magistrate James W. Davis on the charges of driving under the influence of alcohol and obstructing legal process. Adee was found guilty on both counts. On October 15, 1986, Adee was sentenced. For the DUI offense, he received a six-month sentence, suspended except for the statutory 48-hour incarceration (K.S.A. 1986 Supp. 8-1567[d]); a $200 fine; an assessment of $28 court costs; driver's license suspension for six months; and a supervised probationary period of one year. For the obstructing legal process offense, Adee was sentenced to one year in jail, suspended except for 30 days, to be served pursuant to a work release program. Defendant appealed from both convictions.

On November 25, 1986, defendant withdrew his appeal from the DUI conviction. On January 20, 1987, District Judge John F. Christner found Adee not guilty of the charge of obstructing legal process, ruling that a search warrant could not be obtained under K.S.A. 1986 Supp. 8-1001(g) to obtain a sample of defendant's blood over his refusal to submit to alcohol concentration testing. The State appeals from this determination upon a question reserved.

It has long been the rule of this court that questions reserved by the State in a criminal prosecution will not be entertained on appeal merely to demonstrate whether or not error has been committed by the trial court in its rulings adverse to the State. *State v. Willcox*, 240 Kan. 310, Syl. ¶ 1, 729 P.2d 451 (1986); *State v. Holland*, 236 Kan. 840, Syl. ¶ 1, 696 P.2d 401 (1985); *State v. Glaze*, 200 Kan. 324, Syl. ¶ 1, 436 P.2d 377 (1968). Appeals on questions reserved by the State have been generally accepted where they involve questions of statewide interest important to the correct and uniform administration of the crim-

inal law. *State v. Glaze*, 220 Kan. at 325. As we noted in *State v. Holland*, recently enacted statutes which have not previously been before this court are appropriate subjects of questions reserved. 236 Kan. at 841. The matter herein, involving a subsection of our implied consent statute on testing for alcohol concentration, has not previously been before this court.

K.S.A. 1986 Supp. 8-1001 provides:

"(a) Any person who operates or attempts to operate a motor vehicle within this state is deemed to have given consent, subject to the provisions of this act, to submit to one or more tests of the person's blood, breath, urine or other bodily substance to determine the presence of alcohol or drugs. The testing deemed consented to herein shall include all quantitative and qualitative tests for alcohol and drugs. A person who is dead or unconscious shall be deemed not to have withdrawn the person's consent to such test or tests, which shall be administered in the manner provided by this section.

"(b) A law enforcement officer shall request a person to submit to a test or tests deemed consented to under subsection (a) if the officer has reasonable grounds to believe the person was operating or attempting to operate a motor vehicle while under the influence of alcohol or drugs, or both, and one of the following conditions exists: (1) The person has been arrested or otherwise taken into custody for any offense involving operation or attempted operation of a motor vehicle while under the influence of alcohol or drugs, or both, in violation of a state statute or a city ordinance; or (2) the person has been involved in a motor vehicle accident or collision resulting in property damage, personal injury or death. The law enforcement officer directing administration of the test or tests may act on personal knowledge or on the basis of the collective information available to law enforcement officers involved in the accident investigation or arrest.

"(c) If a law enforcement officer requests a person to submit to a test of blood under this section, the withdrawal of blood at the direction of the officer may be performed only by: (1) A person licensed to practice medicine and surgery or a person acting under the supervision of any such licensed person; (2) a registered nurse or a licensed practical nurse; or (3) any qualified medical technician. When presented with a written statement by a law enforcement officer directing blood to be withdrawn from a person who has tentatively agreed to allow the withdrawal of blood under this section, the person authorized herein to withdraw blood and the medical care facility where blood is withdrawn may rely on such a statement as evidence that the person has consented to the medical procedure used and shall not require the person to sign any additional consent or waiver form. In such a case, the person authorized to withdraw blood and the medical care facility shall not be liable in any action alleging lack of consent or lack of informed consent. No person authorized by this subsection to withdraw blood, nor any person assisting in the performance of a blood test nor any medical care facility where blood is withdrawn or tested that has been directed by any law enforcement officer to withdraw or test blood, shall be liable in any civil or

criminal action when the act is performed in a reasonable manner according to generally accepted medical practices in the community where performed.

"(d) If there are reasonable grounds to believe that there is impairment by a drug which is not subject to detection by the blood or breath test used, a urine test may be required. If a law enforcement officer requests a person to submit to a test of urine under this section, the collection of the urine sample shall be supervised by persons of the same sex as the person being tested and shall be conducted out of the view of any person other than the persons supervising the collection of the sample and the person being tested, unless the right to privacy is waived by the person being tested. The results of qualitative testing for drug presence shall be admissible in evidence and questions of accuracy or reliability shall go to the weight rather than the admissibility of the evidence.

"(e) No law enforcement officer who is acting in accordance with this section shall be liable in any civil or criminal proceeding involving the action.

"(f)(1) Before a test or tests are administered under this section, the person shall be given oral and written notice that: (A) There is no right to consult with an attorney regarding whether to submit to testing; (B) refusal to submit to and complete any test of breath, blood or urine hereafter requested by a law enforcement officer will result in six months' suspension of the person's driver's license; (C) refusal to submit to testing may be used against the person at any trial on a charge arising out of the operation or attempted operation of a motor vehicle while under the influence of alcohol or drugs, or both; (D) the results of the testing may be used against the person at any trial on a charge arising out of the operation or attempted operation of a motor vehicle while under the influence of alcohol or drugs, or both; and (E) after the completion of the testing, the person has the right to consult with an attorney and may secure additional testing, which, if desired, should be done as soon as possible and is customarily available from medical care facilities and physicians. After giving the foregoing information, a law enforcement officer shall request the person to submit to testing. The selection of the test or tests shall be made by the officer. *If the person refuses to submit to and complete a test as requested pursuant to this section, additional testing shall not be given* and the person's driver's license shall be subject to suspension as provided in K.S.A. 8-1002 and amendments thereto. The person's refusal shall be admissible in evidence against the person at any trial on a charge arising out of the alleged operation or attempted operation of a motor vehicle while under the influence of alcohol or drugs, or both.

"(2) Failure of a person to provide an adequate breath sample or samples as directed shall constitute a refusal unless the person shows that the failure was due to physical inability caused by a medical condition unrelated to any ingested alcohol or drugs.

"(3) It shall not be a defense that the person did not understand the written or oral notice required by this section.

"(g) *Nothing in this section shall be construed to limit the admissibility at any trial of alcohol or drug concentration testing results obtained pursuant to a search warrant.*

"(h) Upon the request of any person submitting to testing under this section, a

report of the results of the testing shall be made available to such person." (Emphasis supplied.)

The State argues that the enactment of K.S.A. 1986 Supp. 8-1001(g) modified existing Kansas law by permitting the issuance of search warrants for blood samples from persons arrested for DUI who have refused alcohol concentration testing pursuant to K.S.A. 1986 Supp. 8-1001(f). We do not agree.

At this point, the applicable rules of statutory construction should be stated. The fundamental rule of statutory construction is that the purpose and intent of the legislature governs when the intent can be ascertained from the statute. In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. *Harris Enterprises, Inc. v. Moore*, 241 Kan. 59, Syl. ¶ 1, 734 P.2d 1083 (1987); *State v. Cole*, 238 Kan. 370, 371-72, 710 P.2d 25 (1985). When the legislature revises an existing law, as here, it is presumed that the legislature intended to make some change in the law as it existed prior to the amendment. *Curless v. Board of County Commissioners*, 197 Kan. 580, 587, 419 P.2d 876 (1966). Where a statute is designed to protect the public, the language must be construed in the light of the legislative intent and purpose and is entitled to broad interpretation so that its public purpose may be fully carried out. *Johnson v. Killion*, 178 Kan. 154, Syl. ¶ 4, 283 P.2d 433 (1955). A construction which renders part of a legislative act surplusage is to be avoided if reasonably possible. *American Fidelity Ins. Co. v. Employers Mut. Cas. Co.*, 3 Kan. App. 2d 245, Syl. ¶ 4, 593 P.2d 14 (1979).

The Kansas implied consent law (K.S.A. 1986 Supp. 8-1001) is premised, like those of the other states, on the theory that anyone who operates a motor vehicle upon public highways consents in advance to submission to a chemical test in order to determine the amount of alcohol in the driver's blood. See Note, *The New Kansas DUI Law: Constitutional Issues and Practical Problems*, 22 Washburn L.J. 340, 345 (1983) (prior consent to submit to chemical test the central feature of implied consent in all 50 states). The statute permits a driver to refuse to submit to the test.

A refusal, however, triggers two-fold State action: temporary suspension of the driver's license, and admission of the refusal in evidence against the driver at any ensuing trial stemming from the alleged DUI incident. K.S.A. 1986 Supp. 8-1001(f).

The landmark constitutional analysis relative to blood testing was handed down in *Schmerber v. California,* 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966). In *Schmerber,* the issue was the reasonableness of a compelled blood test to prove intoxication. The accused was arrested for driving while intoxicated and, on advice of counsel, refused to submit to the test. Without a warrant, a police officer directed hospital personnel treating the driver to take a blood sample, over the driver's protests. The test results were used to convict him. The Supreme Court rejected his due process Fourth and Fifth Amendments claims, concluding that the compelled blood test was a minor intrusion into the body, the procedure was routine and conducted by qualified persons without risk, and the evidence was relevant. 384 U.S. at 769-71. The court went on to hold that the warrantless "search" by way of the blood sample "was an appropriate incident to petitioner's arrest." 384 U.S. at 771. While ruling that exigent circumstances justified the warrantless "search," the court's comfort level would have been elevated had a search warrant been obtained. The court said:

"Although the facts which established probable cause to arrest in this case also suggested the required relevance and likely success of a test of petitioner's blood for alcohol, the question remains whether the arresting officer was permitted to draw these inferences himself, or was required instead to procure a warrant before proceeding with the test. Search warrants are ordinarily required for searches of dwellings, and, absent an emergency, no less could be required where intrusions into the human body are concerned. The requirement that a warrant be obtained is a requirement that the inferences to support the search 'be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.' [Citations omitted.] The importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great." 384 U.S. at 770.

In *State v. Brunner,* 211 Kan. 596, 602-03, 507 P.2d 233 (1973), we held that a compulsory blood alcohol concentration test for a person arrested for DUI was constitutionally permissible but statutorily prohibited.

The statutory prohibition to compelled blood testing is found in K.S.A. 1986 Supp. 8-1001(f)(1)(E): "If the person refuses to submit to . . . a test as requested . . . additional testing shall not be given." This provision is not construed to be a right of refusal but, rather, it was included in the statute "as a means to avoid the violence which would often attend forcible tests upon a rebellious drunk." *State v. Garner*, 227 Kan. 566, 571-72, 608 P.2d 1321 (1980). The statute was enacted to combat the increasing problem of drunk driving. *State v. Garner*, 227 Kan. at 571. Toward that end, the statute establishes the basic principle that a driver impliedly agrees to submit to a test in return for the privilege of using our public highways. If the driver withdraws that consent by refusing an appropriate test, the statute allows the State to withdraw, temporarily, the driver's privilege of using our public highways. K.S.A. 1986 Supp. 8-1002. In *State v. Bristor*, 236 Kan. 313, 319, 691 P.2d 1 (1984), we said:

> "The very purpose of the implied consent law (K.S.A. 8-1001) is to coerce a motorist suspected of driving under the influence to 'consent' to chemical testing, thereby allowing scientific evidence of his blood alcohol content to be used against him in a subsequent prosecution for that offense. *Prideaux v. State, Dept. of Public Safety*, 310 Minn. at 409-10. For drivers who refuse, the purpose of the statute is to provide an effective means short of physical force to overcome the refusal. *State v. Garner*, 227 Kan. 566, 571-72, 608 P.2d 1321 (1980). The nonphysical means consist of the statutory penalities of license revocation and the admission into evidence in a DUI proceeding of the fact of the refusal. K.S.A. 8-1001(c). Under *Standish* [*v. Department of Revenue*, 235 Kan. 900, 683 P.2d 1276 (1984)], the arrested defendant is to be informed of these consequences. This is a departure from our earliest cases. See, *e.g.*, *Hazlett v. Motor Vehicle Department*, 195 Kan. 439, 442, 407 P.2d 551 (1965); *City of Shawnee v. Gruss*, 2 Kan. App. 2d 131, 134, 576 P.2d 239, *rev. denied* 224 Kan. 843 (1978). Thus, the consent envisioned by the statute is to be implied and if submission is not forthcoming it is to be coerced by knowledge and fear of adverse consequences."

In summary, then, prior to the enactment of K.S.A. 1986 Supp. 8-1001(g), a person arrested for DUI who refused alcohol concentration testing could not be compelled to provide a test sample. Did the enactment of K.S.A. 1986 Supp. 8-1001(g) change this prohibition? We believe not. K.S.A. 1986 Supp. 8-1001(g) is iterated at this point for convenience as follows:

> "(g) Nothing in this section shall be construed to limit the admissibility at any trial of alcohol or drug concentration testing results obtained pursuant to a search warrant."

The statute speaks only of admissibility at trial of test results obtained by a search warrant. It is significant to look at Senate Bill 127 (1985) relevant to (g) as originally introduced, which provided:

"(g) Nothing in this section shall be construed to limit the admissibility at any trial of alcohol or drug concentration testing results obtained pursuant to a search warrant. A search warrant permitting alcohol or drug concentration testing may be issued only upon a showing that a law enforcement officer has probable cause to believe the person was operating a motor vehicle while under the influence of alcohol or drugs and the motor vehicle was involved in an accident resulting in death or serious personal injury likely to result in death." See SB 127, as Amended by Senate Committee of The Whole, and House Federal and State Affairs Committee, at 7.

All but the first sentence of (g) was deleted prior to passage. Clearly, had the bill, as introduced, been enacted, then search warrants would have been permissible when the conditions set forth therein had been met. Yet the Legislature, for reasons not contained in legislative records, chose to enact only the lead-in sentence of (g) which, by itself, does not authorize the issuance of search warrants for DUI suspects. We believe that the intention of subsection (g) as enacted was not to change existing law as to the prohibition against the issuance of search warrants for DUI suspects refusing alcohol concentration testing, but rather to clarify that nothing in the implied consent statute (K.S.A. 1986 Supp. 8-1001) rendered alcohol concentration test results from search warrants issued under some other authority inadmissible in DUI trials. Conceivably, a search warrant for a blood sample could be issued for a suspect of some crime other than DUI. If so, and the results were relevant to a DUI charge against the same individual, then (g) states that nothing in the implied consent statute (K.S.A. 1986 Supp. 8-1001) renders such results inadmissible in the DUI trial.

The State argues that (g), as enacted, is patterned after an Iowa statute (Iowa Code Ann. § 321B.14 [West 1985]) which permits blood samples to be taken pursuant to a search warrant when consent is refused under Iowa's implied consent statute. This argument is not persuasive. The Iowa statute is complex legislation specifying in detail the conditions and manner of securing such a warrant. There is nothing in the record indicating any

legislative intent by Kansas to replicate the Iowa statute in subsection (g) of K.S.A. 1986 Supp. 8-1001.

The conclusion we have reached, that K.S.A. 1986 Supp. 8-1001(g) does not permit the issuance of search warrants for blood samples from persons refusing testing pursuant to K.S.A. 1986 Supp. 8-1001(f), is consistent with the result reached by the Attorney General in Att'y Gen. Op. No. 86-148, involving a related question.

The appeal on the question reserved is denied.

LOCKETT, J., dissenting.