No. 88,556

STATE OF KANSAS, *Appellee*, v. MARK W. CHILDS, *Appellant*.

64 P.3d 389

Opinion filed March 7, 2003.

*Randall L. Hodgkinson*, deputy appellate defender, argued the cause and was on the briefs for appellant.

*Ty Kaufman*, county attorney, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Mark W. Childs was convicted by a jury of one count of possession of methamphetamine and one count of misdemeanor possession of drug paraphernalia. The contraband was seized during an after-hours warrantless search of a licensed club that was conducted pursuant to K.S.A. 41-2613, a provision of the Club and Drinking Establishment Act, K.S.A. 41-2601 *et seq.* On

appeal, Childs challenges the constitutionality of the statute, which makes the right of immediate entry and inspection a condition of licensure for premises where alcoholic liquor is sold. In the alternative, Childs contends that the officers gained entry by coercion, which invalidates the search. Childs also complains of the trial court's jury instructions. The case was transferred by the court from the Court of Appeals. See K.S.A. 20-3018(c).

On October 16, 2000, at approximately 2:30 a.m., four law enforcement officers sought entrance to a licensed private club called Snappers in McPherson, Kansas. The club was licensed to Myron Barrow, who owned the building and the equipment; Childs managed the club and owned the inventory.

Michael Eells, an enforcement agent for the Kansas Alcohol Beverage Control Division, and Officer Brian Weinbrenner of the McPherson police department went to the back door. Two other police officers went to the front door. The officers knocked and announced that they were police officers. After 45 seconds, Agent Eells shone his flashlight through the small window in the back door. After approximately another minute and a half, Childs came to the back door and opened it. Childs blocked the entrance with his body.

Officer Weinbrenner was uniformed, and Agent Eells was wearing a jacket with "Police" written across the front and back. Eells told Childs he was conducting a bar check and told Childs to move out of the way or he would arrest him for obstruction.

Childs moved aside so that Eells and Weinbrenner could enter the back door. Eells told Childs to open the front door for the other officers, and he did so.

Inside the bar, the officers found evidence of after-hours drinking and other violations of the Club and Drinking Establishment Act. Of the approximately dozen people in the bar, only one or two were members. The officers found cold, open bottles of beer and cold, foamy glasses a half hour after consumption was to have stopped.

One of the patrons testified that while she was in Snappers, Childs twice went in and out of a storeroom located at the end of the bar. When the officers came to the doors, Childs first tried to

clear beer off of tables and then locked the storeroom door before going to the back door.

Eells told Childs to unlock the storeroom door, and Childs did so using a key that was in his pocket. On a file cabinet in the storeroom, Eells saw a small plastic bag of powder and a rolled $5 bill on an identification card. The identification card was lying face down. When Childs was three to four feet away from it and before it was turned over, Childs stated that the card was his. There was a powdery residue on the file cabinet, on the identification card, and on the rolled $5 bill. Testing showed that the small plastic bag contained methamphetamine.

The identification card is a hard plastic card printed on the face with the logo TVC Pro-Driver, Inc., a number, and the name of Mark W. Childs. Small print on the reverse of the card indicates that it is identification for a discount pharmacy network.

In the trial court, Childs challenged the legality of the search in a motion to suppress. After hearing evidence on the motion to suppress, the district judge denied the motion. A jury found Childs guilty of possession of methamphetamine and possession of drug paraphernalia. The trial court imposed an underlying 20-month prison sentence with a consecutive 12-month jail sentence and granted probation for 18 months.

On appeal, Childs challenges the constitutionality of K.S.A. 41-2613, legality of the search because the entry was coerced, and several instructions concerning the possession of methamphetamine.

K.S.A. 41-2613 provides:

"The right of immediate entry to and inspection of any premises licensed as a club or drinking establishment or any premises where alcoholic liquor is sold by a holder of a temporary permit, or any premises subject to the control of any licensee or temporary permit holder, by any duly authorized officer or agent of the director, or by any law enforcement officer, shall be a condition on which every license or temporary permit is issued, and the application for, and acceptance of, any license or temporary permit shall conclusively be deemed to be the consent of the applicant and licensee or permit holder to such immediate entry and inspection. Such right of immediate entry and inspection shall be at any time when the premises are occupied and is not limited to hours when the club or drinking establishment is open for business. Such consent shall not be revocable

during the term of the license or temporary permit. Refusal of such entry shall be grounds for revocation of the license or temporary permit."

In neither his written motion to suppress nor his oral argument on the motion did Childs challenge the constitutionality of K.S.A. 41-2613. The State has not objected to Childs' raising the issue for the first time on appeal.

In the written motion to suppress the controlled substances seized during the search of the club, Childs alleged that the search was warrantless and unreasonable but did not elaborate. At the hearing on the motion to suppress, he argued that K.S.A. 41-2613 did not authorize the officers' entry in this case because it does not allow officers to enter a club with neither consent nor a warrant. When Childs refused consent by blocking the officers' entry, according to the argument, the officers' recourse was to seek revocation of the club license. Instead, Childs argued, the officers gained entry by threatening to arrest him, which amounted to coercion in violation of the Fourth Amendment to the United States Constitution.

Childs' argument was rejected by the trial judge:

"It should go without saying that the premises serving alcoholic beverages are among the most heavily regulated by State government in Kansas. It appears to this Court that Agent Eels and others were conducting a valid regulatory search and as such Mr. Childs was not entitled to the same protections as if his personal behaviors were under scrutiny by the officers. Because of this, I believe the remedy for noncompliance is not purely an administrative one, and I find that the officers were entitled to entry into the premises under the circumstances of this case."

The district court also stated that the question whether the scope of the search, which was to check for after-hours drinking, was broad enough to include seizure of the methamphetamine and drug paraphernalia found on the filing cabinet was decided by *State v. Dailey*, 209 Kan. 707, 498 P.2d 614 (1972). In *Dailey*, officers searching a club pursuant to K.S.A. 41-2613 (Weeks) found and seized gambling devices. This court held that the gambling devices were admissible. 209 Kan. at 722.

On appeal, Childs cites *New York v. Burger*, 482 U.S. 691, 96 L. Ed. 2d 601, 107 S. Ct. 2636 (1987), in challenging the consti-

tutionality of K.S.A. 41-2613 as not sufficiently limiting searches in time, place, and scope. Where constitutional grounds are asserted for the first time on appeal, they are not properly before this court for review. *State v. Mason*, 268 Kan. 37, 39, 986 P.2d 387 (1999).

This court has recognized exceptions that would permit this court to consider Childs' constitutional challenge to K.S.A. 41-2613. In *State v. Mincey*, 265 Kan. 257, 267, 963 P.2d 403 (1998), the court identified exceptions to the general rule in cases where:

"(1) the newly asserted theory involves only a question of law arising on proved or admitted facts and which is finally determinative of the case; (2) questions are raised for the first time on appeal if consideration of the same is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of a trial court may be upheld on appeal although that court may have relied on the wrong ground or assigned a wrong reason for its decision."

In this case, the newly asserted theory involves only a question of law arising on proven facts and it would be finally determinative of the case. However, it is a familiar rule that courts will not decide a constitutional question if there is some other ground upon which to decide or dispose of the case. In *McVay v. Rich*, 255 Kan. 371, 874 P.2d 641, (1994), as here, the constitutional challenge was not raised before the district court. In declining to consider the constitutional issue we said:

"Only in cases where it is virtually impossible to decide the issue on the merits without considering the constitutionality will this court entertain the question of constitutionality. For example, in the case of *Van Sickle v. Shanahan*, 212 Kan. 426, Syl. ¶ 3, 511 P.2d 223 (1973), we noted:

'The constitutionality of a statute or an amendment to the Constitution should be considered in an action where it is necessary in order to determine the merits of the action or where the issues cannot be intelligently decided without doing so, notwithstanding the failure of the parties to raise the constitutional question, failure to plead the question, or failure to present the question to the district court.'

We should address constitutional questions raised for the first time in this court only when '[w]e cannot intelligently dispose of this litigation without considering and discussing' those constitutional questions. *State v. Nelson*, 210 Kan. 439, 443, 502 P.2d 841 (1972)." 255 Kan. at 379-80.

Thus, we first consider whether the search was illegal. If we determine that it was illegal, then we do not reach Childs' consti-

tutional challenge to K.S.A. 41-2613. The argument made by Childs in his motion to suppress was that the officers had no right to arrest him for refusing to allow them to enter the club and that their only recourse was to seek revocation of the club license; thus, their threatening to arrest him if he refused them entry constituted coercion in violation of the Fourth Amendment. On appeal, he makes this argument in the alternative to his challenge to the statute. As already noted, the district court rejected Childs' argument that the only remedy available to the officers for noncompliance with the immediate entry and inspection provision of K.S.A. 41-2613 is an administrative one. Since the facts material to the motion to suppress evidence are not in dispute, the question of whether to suppress becomes a question of law. See *State v. Rexroat*, 266 Kan. 50, 53, 966 P.2d 666 (1998).

Citing K.S.A. 41-2633, the State contends that Childs could have been imprisoned for refusing entry to the officers. The statute provides: "Violation of any provision of the club and drinking establishment act . . . for which a penalty is not otherwise specifically provided is punishable by a fine not to exceed $500 or imprisonment not to exceed six months, or both." Childs argues that the provision for revocation of the club license in K.S.A. 41-2613 is a penalty "otherwise specifically provided" so that K.S.A. 41-2633 is not implicated. Because K.S.A. 41-2613 expressly provides that "[r]efusal of such entry shall be grounds for revocation of the license or temporary permit," it appears that Childs' view of the statutory scheme is correct.

Childs relies on *Dailey* and *State v. Adee*, 241 Kan. 825, 740 P.2d 611 (1987), for the premise that the officers had no right to arrest him for refusing entry. Neither case involves a refused entry.

In *Dailey*, a group of officers led by a special agent of the Kansas Bureau of Investigation rang for entry at the locked door of an American Legion Club. When the door was opened, the special agent gave his name, said he was with the KBI, and then stated, "This is a raid." 209 Kan. at 709. Without waiting for a response, he and the other officers rushed into the club. It was disputed whether the doorman was pushed aside. The trial court found that

the entry was coercive, 209 Kan. at 711, but this court reversed, stating:

"Weigel was not forced or manhandled out of the doorway, nor did he say anything that could be construed as negating consent to entrance by the officers. We believe the entry here can best be described as an acquiescence with or submission to lawful authority which we believe falls within the realm of the consent to immediate entry as a condition of licensing, as contemplated by the legislature. Mr. Weigel could have elected to slam the door or block the doorway with his person at the risk of license revocation. The hard choice left to him may well be considered 'coercive' but this is a risk undertaken by the acceptance of a license to operate as a private club. Consent to enter, by the terms of 41-2613, is to be measured against a refusal. Consent to enter was given by the statute, affirmative consent by Weigel was unnecessary, as will be shown later. There is no evidence of anything said or done by Weigel that could be construed as a refusal necessitating an entry by force on the part of the officers. The door was not forced, it was voluntarily opened by Weigel. He did not attempt to block the doorway or resist entrance by the officers." 209 Kan. at 717-18.

The court then stated:

"In the case at bar, the officers were merely asserting their statutory right, both Weigel and defendant were on notice as to the officers' identity and the legal basis for their action. As in *Biswell*, the consent given by the licensee in accepting a license under the act established lawful authority independent of the will of the licensee. Thus, affirmative consent is not required; acquiescence or cooperative submission, as in this case, is sufficient. This is not to say that officers can use any appreciable force to gain entry when confronted with a refusal, which is an option of the licensee. The act affords the remedy of license revocation in such a circumstance."

. . . .

"For the reasons stated we hold that the submission of Weigel and the willing cooperation of defendant constituted consent within the contemplation of 41-2613, *supra*; that the search was not forcible and that the seizure of the subject slot machines was reasonable and lawful." 209 Kan. at 721-22.

Although an actual refusal of entry was not before the court in *Dailey*, the court noted that refusal was an option, and its statements in this regard tend to support Childs' position that entry can be refused upon penalty of license revocation.

The State contends that Childs was subject to arrest under K.S.A. 21-3808(a) for knowingly and intentionally obstructing, resisting, or opposing any person authorized by law in the discharge of any official duty. An option to refuse entry, as recognized by the

court in *Dailey,* however, hardly seems consistent with being subject to prosecution for obstructing official duty.

*Adee* is a case of statutory interpretation involving reconciliation of the language in two parts of K.S.A. 1986 Supp. 8-1001. Due to the narrowness of the question in *Adee,* the decision does not lend itself to broad application and provides little guidance for the present case. The question to be resolved through statutory interpretation in *Adee* was whether under the Kansas implied consent law the refusal of a person arrested for DUI to submit to alcohol concentration testing could be overridden by an officer's obtaining a search warrant for a blood sample. The Kansas implied consent law is premised "on the theory that anyone who operates a motor vehicle upon public highways consents in advance to submission to a chemical test in order to determine the amount of alcohol in the driver's blood." 241 Kan. at 829. K.S.A. 1986 Supp. 8-1001(f)(1) prohibited "additional testing" if a person refused and made refusal grounds for license suspension. K.S.A. 1986 Supp. 8-1001 (g) provided that "[n]othing in this section shall be construed to limit the admissibility at any trial of alcohol or drug concentration testing results obtained pursuant to a search warrant." The court concluded that subsection (g) did not permit the issuance of a search warrant for a blood sample from a person refusing testing pursuant to subsection (f). 241 Kan. at 833.

The State cites *United States v. Biswell,* 406 U.S. 311, 32 L. Ed. 2d 87, 92 S. Ct. 1593 (1972), seemingly for the proposition that Childs' permitting the entry was voluntary. *Biswell,* however, cannot be extended far enough to support the proposition. In *Biswell,* the Court reversed the opinion of the Tenth Circuit Court of Appeals holding that 18 U.S.C. § 923(g), which authorized warrantless searches of federally licensed gun dealers, violated the Fourth Amendment and that Biswell's consent was invalid. Biswell, a pawnshop operator federally licensed to deal in sporting weapons, permitted an agent to inspect his books but asked for a warrant when the agent sought entry into a locked storeroom. After being presented with and reading a copy of the authorizing statute, Biswell unlocked the storeroom where there were sawed-off rifles he was not licensed to possess. The Supreme Court concluded that

the statute was constitutional. Hence, the claim that Biswell's consent to inspect the locked storeroom was invalid was laid to rest. In the present case, the defendant's contention that his consent was coerced is based not on the unconstitutionality of the statute but on the officer's threat to arrest him when arrest was not a possibility.

At the heart of this analysis is the question whether Childs' refusal to permit the officers to enter the club would have subjected him to arrest under K.S.A. 21-3808(a). On this key element, the State asserts that Childs would be subject to arrest but fails to cite any authority that would allow an arrest for obstructing official duty in the context of an administrative search.

Relying on *Dailey*, the State also argues that the point is moot because Childs did not refuse entry to the officers. There is no comparison between the cases. In *Dailey*, the person who opened the door offered no resistance when the officers rushed in. In the present case, Childs blocked the door with his body so that the officers were unable to enter until Childs moved aside in response to Agent Eells' threat to arrest him for refusing entry. In the circumstances of *Dailey*, there was no issue of refusing entry. In the present case, the key issue centers on Childs' yielding entry to the officers after initially refusing it.

K.S.A. 41-2613 identifies license revocation as the consequence for refusing to permit officers to enter and inspect. Similarly, the statute at issue in *Colonnade Corp. v. United States*, 397 U.S. 72, 74, 25 L. Ed. 2d 60, 90 S. Ct. 774 (1970), which applied to retail dealers in liquors, identified a $500 fine as the consequence for refusing to permit Treasury Department agents to enter and examine taxable articles. The question before the Supreme Court was "whether the imposition of a fine for refusal to permit entry—with the attendant consequences that violation of inspection laws may have in this closely regulated industry—is under this statutory scheme the exclusive sanction, absent a warrant to break and enter." 397 U.S. at 74. The Supreme Court concluded that imposition of the fine was the exclusive sanction. The court stated:

"We deal here with the liquor industry long subject to close supervision and inspection. As respects that industry, and its various branches including retailers,

Congress has broad authority to fashion standards of reasonableness for searches and seizures. Under the existing statutes, Congress selected a standard that does not include forcible entries without a warrant. It resolved the issue, not by authorizing forcible, warrantless entries, but by making it an offense for a licensee to refuse admission to the inspector." 397 U.S. at 77.

In formulating the statute at issue in the present case, the legislature resolved the issue of refusal by making refusal of entry grounds for revocation of the license for a club or drinking establishment. K.S.A. 41-2613. By so doing the legislature acknowledged the licensee's right to refuse to submit to entry and inspection by the law enforcement officers. However, such refusal triggers State action for license revocation. In *Dailey*, this court believed the legislature contemplated consent to immediate entry to encompass acquiescence with or submission to the entry by the licensees. We further stated that "[c]onsent to enter, by the terms of 41-2613, is to be measured against a refusal." 209 Kan. at 718. We also noted that confronted with a refusal, the officers cannot use force to gain entry.

We, therefore, conclude that Childs' action constituted a refusal as contemplated by K.S.A. 41-2613. We interpret K.S.A. 41-2613 to provide the sanction of license revocation as the exclusive sanction for refusing entry to duly authorized officers. Agent Eells did not have authority to arrest Childs for obstruction of official duty and Eell's overcoming Childs' resistance by threatening to arrest him amounted to gaining entry on false pretenses. Thus, the officers' entry and inspection was not authorized under K.S.A. 41-2613 and constituted an unlawful entry and search. Under these circumstances, law enforcement officers may not compel entry by force except through the warrant process. The district court erred in failing to grant Childs' motion to suppress. In view of our ruling on this issue, we do not consider the constitutionality of K.S.A. 41-2613 or Childs' challenge to the instructions given by the trial court.

Reversed.

ABBOTT, J., not participating.

DAVID S. KNUDSON, J., assigned.