(329 P.3d 515)
No. 109,634

CITY OF DODGE CITY, *Appellee*, v. ORIE J. WEBB, *Appellant*.

Opinion filed June 13, 2014.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*Terry J. Malone*, of Williams, Malone & Ralph, P.A., of Dodge City, for appellee.

Before MCANANY, P.J., GREEN and POWELL, JJ.

POWELL, J.: Orie J. Webb appeals his second conviction for driving under the influence (DUI), arguing the preliminary breath test (PBT) administered to him was illegally obtained in violation of the Fourth Amendment to the United States Constitution. Specifically, Webb argues K.S.A. 2011 Supp. 8-1012(b) is unconstitutional because it allows an officer to request a PBT upon reasonable suspicion—rather than probable cause—that the driver was operating a vehicle while under the influence of alcohol or drugs or both. Webb claims the officer did not have probable cause to arrest him for DUI without the PBT results. Webb also claims the district court should have suppressed the breathalyzer test results because the officer improperly coerced him into submitting to the test by threatening to obtain a search warrant to draw his blood if he refused.

Because the officer had probable cause without the PBT results to believe Webb was driving under the influence and because the officer had legal justification for threatening to obtain a search warrant after Webb's initial refusal to take the breathalyzer test, we conclude Webb was not improperly coerced into ultimately submitting to the breathalyzer test, and we affirm the district court's denial of Webb's motion to suppress and Webb's conviction for DUI.

## FACTUAL AND PROCEDURAL HISTORY

On November 24, 2011, at 1:56 a.m., Officer Justin Warkentin of the Dodge City Police Department stopped a vehicle for an insufficiently illuminated license plate; Warkentin could not read the expiration date on the plate. At the time of the stop, Warkentin did not suspect the driver was impaired.

As he approached, Warkentin detected a strong odor of alcohol coming from inside the vehicle. Warkentin identified Webb as the driver and noted there were two passengers in the vehicle. The passengers admitted to drinking, but Webb denied having had anything to drink.

After he checked Webb's driver's license, Warkentin asked Webb to step out of the vehicle so he could determine whether

the odor of alcohol was coming from Webb or his passengers. After Webb exited the vehicle, Warkentin determined there was a moderate odor of alcohol coming from Webb's person and asked Webb a second time whether he had consumed any alcoholic beverages. Webb admitted to drinking one beer.

Webb agreed to perform two field sobriety tests and failed both; he displayed four out of eight clues of impairment on the walk-and-turn test and three out of four clues of impairment on the one-leg-stand test. At the conclusion of the field sobriety tests, Webb agreed to take a PBT, the results of which indicated his blood-alcohol level was .127.

Based upon Warkentin's observations and the results of the PBT, Warkentin arrested Webb for DUI and transported him to the Ford County Sheriff's Department. At the sheriff's department, Warkentin gave Webb the required written and oral notices using the DC-70 implied consent advisory form and then requested Webb to submit to a breath test; Webb refused. Warkentin informed Webb that if he refused the breath test a search warrant would be obtained to draw his blood. Webb told Warkentin he was afraid of needles and reluctantly agreed to take the breath test. The test results indicated a blood-alcohol level of .125. Webb then admitted to drinking six beers.

Among other things, Webb was charged with DUI. He was convicted in the Dodge City Municipal Court and then appealed to the Ford County District Court. Prior to trial before the district court, Webb filed a motion to suppress the results of the PBT and the breathalyzer test. Following an evidentiary hearing, the district court denied Webb's motion. Thereafter, Webb waived his right to a jury trial, and the parties submitted the case to the district court. After hearing testimony from Warkentin, the district court found Webb guilty of second-offense DUI, no proof of liability insurance, and operating a vehicle without a proper tag light. The court imposed an underlying sentence of 90 days in the Ford County Jail but granted probation for a term of 12 months.

Webb timely appeals.

## Is K.S.A. 2011 Supp. 8-1012(b) Unconstitutional Because It Allows an Officer to Request a PBT upon Reasonable Suspicion Rather Than Probable Cause?

Webb first contends the district court erred in finding Warkentin had reasonable suspicion to request a PBT under K.S.A. 2011 Supp. 8-1001(b).

Under the challenged statute, a law enforcement officer can request a person to submit to a PBT if the officer has reasonable suspicion the person was operating a vehicle under the influence of alcohol or drugs or both. Webb claims this statute is unconstitutional because it implies consent to an otherwise unconstitutional search under the Fourth Amendment. Webb also argues that because probable cause is required to conduct a PBT, and the statute only requires reasonable suspicion to conduct such a test, the statute is unconstitutional as applied to him. Questions involving the constitutionality of statutes are questions of law subject to de novo review. *Miller v. Johnson*, 295 Kan. 636, 647, 289 P.3d 1098 (2012) (citing *Brennan v. Kansas Insurance Guaranty Ass'n*, 293 Kan. 446, 450, 264 P.3d 102 [2011]).

It is true that a PBT which utilizes deep lung air constitutes a search under the Fourth Amendment. *State v. Jones*, 279 Kan. 71, 76, 106 P.3d 1 (2005) (relying on *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 109 S. Ct. 1402, 103 L. Ed. 2d 639 [1989]). However, we need not answer the question of whether the reasonable suspicion threshold is constitutional because it is not dispositive of this case. Here, even though the implied consent statute only requires reasonable suspicion—rather than probable cause—to administer a PBT, the district court determined Warkentin had probable cause. Therefore, if probable cause justified the PBT, then determining the constitutionality of K.S.A. 2011 Supp. 8-1012 is irrelevant to the disposition of this case. See *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 519, 242 P.3d 1179 (2010) (officer had probable cause to administer PBT; thus, adjudication of constitutionality of PBT authorization statute was unnecessary).

*Did the officer have probable cause to believe Webb was DUI?*

"An appellate court generally reviews a trial court's decision on a motion to suppress using a bifurcated standard. The trial court's findings are first reviewed to determine whether they are supported by substantial competent evidence. Appellate courts do not reweigh the evidence, assess the credibility of the witnesses, or resolve conflicting evidence. The ultimate legal conclusion regarding the suppression of evidence is then reviewed de novo. If the material facts in a trial court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. [Citation omitted.]" *State v. Martinez,* 296 Kan. 482, 485, 293 P.3d 718 (2013).

Because the material facts in this case are not in dispute, the question of whether the officer had probable cause is a question of law over which we exercise unlimited review. See *Martinez,* 296 Kan. at 485. "Probable cause is the reasonable belief that a specific crime has been or is being committed [by] the defendant . . . ." *Allen v. Kansas Dept. of Revenue,* 292 Kan. 653, 656-57, 256 P.3d 845 (2011), *disapproved in part on other grounds by Sloop v. Kansas Dept. of Revenue,* 296 Kan. 13, 290 P.3d 555 (2012). Whether probable cause exists "is determined by evaluating the totality of the circumstances" and considering "the information and fair inferences therefrom, known to the officer at the time of the arrest." *Allen,* 292 Kan. at 657. When making a determination of whether probable cause exists, courts should not rigidly apply factors or merely count the facts or factors that support one determination over the other. 292 Kan. at 657.

Webb rightly notes there were some facts in his favor. Warkentin did not observe any indication in Webb's driving that he was impaired, Webb produced his driver's license without fumbling, and Webb did not have slurred speech. Nevertheless, Warkentin observed other evidence during their encounter that established probable cause to believe Webb was driving under the influence of alcohol. Warkentin stopped Webb for a traffic violation—his license plate was not sufficiently illuminated and Warkentin could not read the expiration sticker. Upon making contact with Webb, Warkentin smelled a strong odor of alcohol coming from inside the vehicle. Warkentin later determined a moderate odor of alcohol

was coming from Webb's person. While Webb initially denied drinking that evening, he later admitted to consuming one beer. Webb also failed both field sobriety tests. Based on these facts, we agree with the district court's conclusion Warkentin had probable cause to believe Webb was driving under the influence, justifying Warkentin's request that Webb submit to the PBT.

Moreover, our Supreme Court has found probable cause on similar facts. The *Smith* court found probable cause to arrest when the driver smelled of alcohol, had bloodshot eyes, admitted to drinking, possessed an open container, presented two clues of impairment on the walk-and-turn test, and presented one clue of impairment on the one-leg-stand test. *Smith*, 291 Kan. at 518-19; see also *Campbell v. Kansas Dept. of Revenue*, 25 Kan. App. 2d 430, 431-32, 962 P.2d 1150 (officer had probable cause to believe driver was DUI when driver was speeding in the early morning hours, smelled of alcohol, had glazed and bloodshot eyes, and admitted to having had a few drinks), *rev. denied* 266 Kan. 1107 (1998). Weighing the totality of the circumstances, Warkentin had probable cause to believe Webb was driving under the influence of alcohol without considering the PBT results.

Because Warkentin had probable cause to believe Webb was driving under the influence, thereby justifying his request that Webb submit to the PBT, we need not address Webb's claim that K.S.A. 2011 Supp. 8-1012 is unconstitutional. See *Wilson v. Sebelius*, 276 Kan. 87, 91, 72 P.3d 553 (2003) ("Appellate courts generally avoid making unnecessary constitutional decisions" where valid, alternate grounds for relief exist.).

DID THE DISTRICT COURT IMPROPERLY DENY WEBB'S MOTION TO SUPPRESS, SPECIFICALLY FINDING THE BREATH TEST RESULTS WERE ADMISSIBLE PURSUANT TO THE KANSAS IMPLIED CONSENT STATUTE EVEN THOUGH WEBB HAD PREVIOUSLY REFUSED TO SUBMIT TO SUCH TESTING?

Next, Webb argues he was improperly coerced into submitting to a breath test, thus invalidating his consent and making the breath test results inadmissible. The City counters that Webb was not

coerced because he never testified he felt threatened or coerced, and that even if he was coerced, such coercion was lawful.

The City has the burden of proving consent to a search by a preponderance of the evidence. See *State v. Brown*, 245 Kan. 604, 606, 783 P.2d 1278 (1989). This is a question of fact, which we review to determine if substantial competent evidence supports the trial court's findings. *State v. Ransom*, 289 Kan. 373, 380, 212 P.3d 203 (2009). To the extent resolution of this issue involves statutory interpretation, we exercise unlimited review. *State v. Dale*, 293 Kan. 660, 662, 267 P.3d 743 (2011).

The facts surrounding the breath test are not in dispute. At the sheriff's department, Warkentin gave Webb written and oral notice of the implied consent advisories using the DC-70 form. Webb refused to take the breathalyzer test. Warkentin then informed Webb that if he refused the breath test, Warkentin would obtain a search warrant to draw Webb's blood. Webb told Warkentin he was afraid of needles and agreed to take the breathalyzer test. The results indicated Webb's blood-alcohol level was .125.

*Was Webb's consent voluntary or due to improper coercion?*

"Our state and federal Constitutions protect citizens from unlawful searches and seizures." *State v. Daniel*, 291 Kan. 490, 496, 242 P.3d 1186 (2010), *cert. denied* 131 S. Ct. 2114 (2011). The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Our Supreme Court has "interpret[ed] § 15 of the Kansas Constitution Bill of Rights to provide the same protection from unlawful government searches and seizures as the Fourth Amendment to the federal Constitution." 291 Kan. at 498.

" 'Subjecting a person to a breathalyzer test, which generally requires the production of alveolar or "deep lung" breath for chemical analysis, . . . implicates similar concerns about bodily integrity and, like the blood-alcohol test . . . considered in *Schmerber* [*v.*

*California*, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966)], should also be deemed a search. [Citation omitted.]' " *Jones*, 279 Kan. at 76 (quoting *Skinner*, 489 U.S. at 616-17). Moreover, under the United States and Kansas Constitutions, a search conducted without a warrant is per se unreasonable unless a specifically established exception applies. *State v. Damm*, 246 Kan. 220, 221, 787 P.2d 1185 (1990). Those exceptions include " 'consent; search incident to a lawful arrest; stop and frisk; probable cause plus exigent circumstances; the emergency doctrine; inventory searches; plain view or feel; and administrative searches of closely regulated businesses.' [Citation omitted.]" *State v. Sanchez-Loredo*, 294 Kan. 50, 55, 272 P.3d 34 (2012). "It is the State's [or City's] burden to validate a warrantless search by fitting it within one of the recognized exceptions . . . ." *State v. Johnson*, 297 Kan. 210, 223, 301 P.3d 287 (2013).

Typically, lawful consent by the individual must be voluntarily, intelligently, and knowingly given, but in the context of DUI investigations our Supreme Court has declared: "[C]ompulsory testing for alcohol or drugs through drivers' implied, even coerced, consent does not violate the [United States] Constitution; it is reasonable in light of the State's compelling interest in safety on the public roads. [Citations omitted.]" *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 635, 176 P.3d 938 (2008). This notwithstanding, when "consent is obtained by threat of consequences without justification in law, such consent cannot be said to be voluntary." *State v. Brunner*, 211 Kan. 596, 604, 507 P.2d 233 (1973), *disapproved in part on other grounds by State v. Murry*, 271 Kan. 223, 21 P.3d 528 (2001); but see *City of Kingman v. Lubbers*, 31 Kan. App. 2d 426, 428, 65 P.3d 1075 (2003) (when consent is obtained after informing a driver of actual legal consequences, the consent, if freely given, is valid), *rev. denied* 276 Kan. 967 (2003); see also *Brown*, 245 Kan. at 606 (when warrantless search is justified by consent, consent must be voluntarily, intelligently, and knowingly given).

As Webb does not challenge the propriety of the implied consent warnings, the question is, therefore, whether the officer's threat to obtain a warrant in order to draw Webb's blood had justification

in law, *i.e.*, was the officer legally entitled to seek a warrant in order to obtain a sample of Webb's blood after he had refused to submit to a breathalyzer test? We conclude the answer to that question is yes.

Webb relies on *State v. Adee*, 241 Kan. 825, 829-30, 740 P.2d 611 (1987), to argue that once a defendant refuses to submit to testing pursuant to the Kansas implied consent statute, no further testing may be done. In *Adee*, the defendant was arrested for DUI and refused to submit to a blood test to determine his blood-alcohol concentration. The officer obtained a search warrant to extract a blood sample from the defendant. The defendant refused to cooperate in the taking of the blood sample, so the State charged him with obstructing legal process. The district court found the defendant not guilty of obstructing legal process, finding a search warrant could not be obtained after a defendant refused such testing. The State appealed.

On appeal, our Supreme Court held a search warrant could not be obtained to compel a blood sample after a defendant refused testing. 241 Kan. at 833. The court relied on K.S.A. 1986 Supp. 8-1001(f)(1)(E), which stated in part: "If the person refuses to submit to . . . a test as requested . . . , additional testing shall *not* be given . . . ." (Emphasis added.) 241 Kan. at 831. The Court explained: "This provision is not construed to be a right of refusal but, rather, it was included in the statute 'as a means to avoid the violence which would often attend forcible tests upon a rebellious drunk.' " 241 Kan. at 831 (quoting *State v. Garner*, 227 Kan. 566, 571-72, 608 P.2d 1321 [1980]).

The outright prohibition of forcible tests was slightly relaxed in subsequent versions of the statute. Upon review of the 2003, 2006, and 2007 versions of the Kansas implied consent statute, the Kansas Supreme Court and two panels of this court similarly recognized an officer could not compel a person to submit to testing except when that person had been involved in an accident involving death or serious bodily injury. See, *e.g.*, *State v. May*, 293 Kan. 858, 865, 269 P.3d 1260 (2012); *State v. Fritzemeier*, No. 97,016, 2007 WL 2080481 (Kan. App. 2007) (unpublished opinion); *State v. Befort*, No. 91,565, 2005 WL 81499, at *3 (Kan. App. 2005)

(unpublished opinion). Other than the narrow exception for injury or fatality accidents, the implied consent statute applicable in *May*, *Fritzemeier*, and *Befort* was similar to the statute in *Adee*. Subsection (h) of the 2003, 2006, and 2007 versions of the Kansas implied consent statute stated:

"If the person refuses to submit to . . . a test *as requested pursuant to this section*, additional testing *shall not* be given unless the certifying officer has probable cause to believe that the person, while under the influence of alcohol . . . , has operated a vehicle in such a manner as to have caused the death of or serious injury to another person." (Emphasis added.) K.S.A. 8-1001(h).

However, in 2008, the Kansas Legislature revised the implied consent statute further and eliminated subsection (h) entirely, changing the calculus in our view. We note that "when the legislature revises an existing law, the court presumes that the legislature intended to change the law that existed prior to the amendment." *Snellings*, 294 Kan. 149, 157, 273 P.3d 739 (2012). Because the Kansas Legislature took out the language prohibiting additional testing after a refusal, we presume the legislature intended to change the law, and the statute now allows for additional testing after a refusal. Our conclusion is bolstered by the language in K.S.A. 2011 Supp. 8-1001(t), which states: "Nothing in this section shall be construed to limit the admissibility at any trial of alcohol or drug concentration testing results obtained pursuant to a search warrant." Therefore, we hold that the Kansas implied consent statute no longer contains any prohibition against an officer obtaining a search warrant supported by probable cause to obtain blood from a driver even after the driver previously refused to submit to a test. *Cf. State v. Declerck*, 49 Kan. App. 2d 908, 919, 317 P.3d 794 (2014) (K.S.A. 2011 Supp. 8-1001[b][2] is unconstitutional to the extent it allows a search and seizure absent probable cause to believe the person was operating or attempting to operate a vehicle under the influence of drugs or alcohol), *petition for rev. filed* March 6, 2014.

Despite the legislature's revisions to the Kansas implied consent statute, it still contains more protections than are required by the federal Constitution. See generally *Brunner*, 211 Kan. at 603 (prior implied consent law prohibited compulsory test while constitution

permitted it). Significantly, K.S.A. 2011 Supp. 8-1001(d)(3) states in pertinent part: "A *law enforcement officer may* direct a medical professional . . . to draw a sample of blood from a person: . . . if the person refuses to submit to and complete the test, if the person meets the requirements of paragraph (2) of subsection (b)." (Emphasis added.) Paragraph (2) of subsection (b) limits those instances to when the person was operating or attempting to operate a vehicle and the vehicle was involved in an injury or fatality accident and the driver could be cited for any traffic offense. This language clearly limits the ability of an officer to obtain a blood draw, in the absence of consent, to those situations where there has been an injury or fatality accident and the driver could be cited for any traffic offense.

However, this limitation is not applicable to circumstances where an officer has probable cause to obtain a search warrant after a refusal, because a search warrant in these instances is a *written order by a magistrate* directing a medical professional to draw blood. See K.S.A. 22-2202 (search warrant is statutorily defined in part as a "written order made by a magistrate"). The statute limits the ability of law enforcement to direct a medical professional to draw blood, not a neutral magistrate's ability to so direct. This makes sense because the United States and Kansas Supreme Courts have recognized the importance, even the preference, of utilizing a neutral and detached magistrate to determine " 'whether or not to invade another's body in search of evidence of guilt.' " *Adee*, 241 Kan. at 830 (quoting *Schmerber*, 384 U.S. at 770).

Accordingly, under K.S.A. 2011 Supp. 8-1001, Warkentin was statutorily authorized to obtain a warrant to draw Webb's blood even after Webb refused to submit to the breathalyzer test. However, the warrant would still have had to be supported by probable cause because, "[g]enerally, a threat to obtain rather than a threat to seek a search warrant will invalidate a subsequent consent if there were not then grounds upon which a warrant could issue." *Brown*, 245 Kan. at 612. Because we have already found that Warkentin had probable cause to believe Webb was driving under the influence even prior to the administration of the PBT, Warkentin

did not improperly threaten a sanction not authorized by law; thus, Webb's consent was voluntary.

Affirmed.