(225 P.3d 767)

No. 102,917

STATE OF KANSAS, *Appellant*, v. PAUL F. WEILERT, *Appellee*.

Opinion filed March 5, 2010.

*Edward C. Hageman*, county attorney, and *Steve Six*, attorney general, for appellant.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellee.

Before LEBEN, P.J., CAPLINGER and BUSER, JJ.

LEBEN, J.: After Paul Weilert was charged with felony driving under the influence of alcohol, the district court ruled inadmissible two key items of the evidence against him—blood-test results obtained at a hospital treating him for medical purposes and Weilert's statement to the medical personnel about his alcohol consumption. The district court held (1) that after a driver refuses consent to law enforcement for a blood or breath test, the State can't get other test results; (2) that disclosure of a patient's medical information was prohibited under federal law; and (3) that a Kansas statute limiting the application of the physician-patient privilege was unconstitutional.

The State has appealed, and we have jurisdiction over its interlocutory appeal. See K.S.A. 22-3601(a). We find no support for the district court's rulings that disclosure of Weilert's blood-test results would violate federal law or that the Kansas Legislature may not limit the application of the statutorily created physician-patient privilege in felony and DUI cases. Nor does the State's implied-consent law forbid the admission of independent test results of a driver's blood or breath. Having cleared those hurdles, the admis-

sibility of this evidence is relatively straightforward. The evidence is clearly relevant: the State asserts that the blood-test results showed that Weilert was above legal limits and Weilert admitted to medical personnel that he had drunk six hard-liquor drinks before he crashed his motorcycle. Under Kansas law, all relevant evidence is admissible unless some statute precludes its admission. K.S.A. 60-407(f). The Kansas physician-patient privilege doesn't apply in felony and DUI cases, K.S.A. 60-427, so there's no statutory basis to exclude this evidence. It is therefore admissible.

### FACTUAL BACKGROUND

Weilert crashed and totaled his motorcycle on U.S. 24 highway in Rooks County. Kansas Highway Patrol troopers responding to the scene noted that the highway at the crash location was straight and level. One trooper interviewed Weilert, who was standing in the roadway covered in dirt and grass. Weilert's hands were scraped, but he said he didn't want any medical treatment.

The trooper thought Weilert appeared intoxicated based on his facial expression, particularly his eyes. Weilert initially said he had struck a deer with his motorcycle, but officers didn't find any evidence to suggest the presence of a deer. Weilert only said he wasn't sure he'd hit the deer after the officer pointed out that no evidence suggested he'd hit a deer. As their conversation continued, the trooper smelled a strong odor of alcoholic beverages coming from Weilert.

A second trooper on the scene testified that Weilert had slurred speech and a strong odor of alcohol. Weilert initially told that trooper that he hadn't been drinking but changed his response after the trooper said he would give Weilert a preliminary breath test. The results of that test showed a result over the legal limit; the trooper arrested Weilert and took him to the courthouse.

On arrival there, Weilert asked that medical personnel look at his injured hands. A trooper took him to the local hospital, and the trooper read required legal notices for the purposes of obtaining a blood test for law-enforcement purposes. Weilert refused to consent to such a test. The trooper then turned Weilert over to medical personnel for treatment while the trooper filled out paperwork in

the hallway. The trooper overheard Weilert give permission to medical personnel to obtain a blood sample for medical purposes only, and the trooper also overheard Weilert say that he'd consumed six hard-alcohol drinks before the accident. Weilert told medical personnel that they could have a sample of his blood but that he didn't want to provide one to the trooper. The State ultimately obtained the blood-test result under a court order.

## DISTRICT COURT RULING AND STANDARD OF REVIEW

The district court held that both the test results and Weilert's statement to medical personnel were inadmissible. The court found that since Weilert had refused to give his blood to law enforcement for testing the State couldn't use the test results obtained during medical treatment:

"As to the blood test, I agree with [Weilert's attorney that] he refused. That ends it. He—the evidence I heard was that he said if the doctor needs the blood, I'll give it to the doctor to treat me, but not to give [it] to the trooper. So that's tantamount to a refusal. I don't think the law contemplates using blood in that manner."

The court separately ruled that the State could not present evidence of the statement that Weilert made to medical personnel about his liquor consumption. The court recognized that the Kansas Legislature had statutorily provided that the physician-patient privilege would not be available in felony DUI cases. K.S.A. 60-427(b). But the court concluded that Weilert had an expectation of privacy for medical information he provided for treatment purposes and that the limitation in K.S.A. 60-427(b) that makes the physician-patient privilege inapplicable to felony DUI cases was unconstitutional:

"As to overhearing the conversation about the drinks, that was totally innocuous. The officer was out in the hall, writing up his report. Mr. Weilert apparently was speaking loud enough to be heard. On the other hand, he had an expectation of privacy. . . .

. . . .

". . . I don't think matters related to the doctors and nurses verbally by the defendant with an expectation of privacy are [admissible]. . . . [L]ogically the patient has a right to a physician/patient privilege. I don't think the legislature can do what it did. . . . [W]hen it comes down to medical consultation, if the doctor

needed to know how much you've had to drink in order for him to properly treat [the patient], that would not be admissible."

Asked by the State to clarify the ruling, the district court said it was finding that K.S.A. 60-427(b)'s limitation of the physician-patient privilege was unconstitutional. The judge also said that this limitation of privilege "conflicts with the HIPAA laws. They won't even talk to my wife unless I in a writing allow her to speak to them. It's gotten very restrictive."

On review of a district court's ruling on a motion to suppress evidence, we review the factual basis of the ruling to determine whether substantial evidence supports it. We then review the district court's legal conclusions independently, without any required deference to the district court. *State v. Morlock*, 289 Kan. 980, Syl. ¶ 1, 218 P.3d 801 (2009). Neither party contends that any of the significant facts are in dispute in Weilert's case so we proceed to an independent review of the district court's legal conclusions.

I. *The District Court's Conclusion that K.S.A. 60-427(b) Is Unconstitutional Is Erroneous.*

We begin with the district court's conclusion that K.S.A. 60-427(b) is unconstitutional. When considering the constitutionality of a statute, we must be respectful of the other branches of government. Courts thus must resolve all doubts in favor of a statute's validity and must interpret the statute in a manner that makes it constitutional if there is any reasonable way to do so. *State v. Laturner*, 289 Kan. 727, 735, 218 P.3d 23 (2009).

The statute at issue is K.S.A. 60-427(b), which spells out the legal principles that are traditionally recognized as physician-patient privilege. Because common-law privileges from disclosing information are not recognized in Kansas, the statutory language—as chosen by our legislature—determines the scope of the physician-patient privilege. *State v. Clovis*, 248 Kan. 313, 323, 807 P.2d 127 (1991).

Before 1988, the physician-patient privilege under K.S.A. 60-427(b) applied fully in misdemeanor cases but was not available to preclude the admission of evidence in felony prosecutions. Thus, in 1978, the Kansas Supreme Court held that a physician could not

testify about information acquired in the examination of a patient given a medical examination after a misdemeanor DUI arrest. *State v. George,* 223 Kan. 507, 575 P.2d 511 (1978). But K.S.A. 60-427(b) was amended in 1988 to add misdemeanor DUI prosecutions to those in which the privilege may not be asserted. L. 1988, ch. 210, sec. 1. K.S.A. 60-427(b) now precludes the assertion of the physician-patient privilege in felony cases and in all DUI cases:

"[A] person, whether or not a party, has a privilege in a civil action or *in a prosecution for a misdemeanor, other than a prosecution for a violation of K. S.A. 8-1567* [the DUI statute] and amendments thereto or an ordinance which prohibits the acts prohibited by that statute, to refuse to disclose, and to prevent a witness from disclosing, a communication, if the person claims the privilege and the judge finds that: (1) The communication was a confidential communication between patient and physician; (2) the patient or the physician reasonably believed the communication necessary or helpful to enable the physician to make a diagnosis of the condition of the patient or to prescribe or render treatment therefor; (3) the witness (i) is the holder of the privilege, (ii) at the time of the communication was the physician or a person to whom disclosure was made because reasonably necessary for the transmission of the communication or for the accomplishment of the purpose for which it was transmitted or (iii) is any other person who obtained knowledge or possession of the communication as the result of an intentional breach of the physician's duty of nondisclosure by the physician or the physician's agent or servant; and (4) the claimant is the holder of the privilege or a person authorized to claim the privilege for the holder of the privilege." (Emphasis added.)

Thus, two portions of the statute preclude its application to a felony DUI case. First, the privilege has always applied by statute only in civil cases and misdemeanor cases. The Kansas Supreme Court noted in *State v. Parson,* 226 Kan. 491, 492-93, 601 P.2d 680 (1979), that the physician-patient privilege "may not be invoked" in felony cases based on the statutory language. See also *State v. Humphrey,* 217 Kan. 352, Syl. ¶ 8, 537 P.2d 155 (1975) (under the statutory language, the physician-patient privilege "does not exist in felony cases"); *State v. Campbell,* 210 Kan. 265, 281, 500 P.2d 21 (1972) (same). Second, even if the charge against Weilert had been a misdemeanor, language added to the statute in 1988 ("other than a prosecution for a violation of K.S.A. 8-1567") has eliminated the application of the privilege in misdemeanor DUI prosecutions.

The district court provided no authority for its conclusion that K.S.A. 60-427(b)'s bright-line rule making the physician-patient privilege inapplicable in felony and DUI cases is unconstitutional. Nor has Weilert provided any.

To be sure, a constitutional right to privacy has been recognized in some circumstances, and this right has been applied by some courts to the right to obtain health care confidentially. See *Alpha Med. Clinic v. Anderson*, 280 Kan. 903, 919-21, 128 P.3d 364 (2006) (citing cases). Accordingly, even in criminal cases, the courts have sometimes limited the discovery of an individual's medical records. See *Alpha Med. Clinic*, 280 Kan. at 923-25 (requiring the redaction of medical records in an abortion case to avoid identifying patients). Yet we have found no case suggesting that there is an individual constitutional right to be afforded a physician-patient privilege in *all* circumstances. Further, the patients in the *Alpha Medical Clinic* case were not the targets of an investigation.

The Kansas Legislature has provided that the statutorily created physician-patient privilege may not be used in felony or DUI cases. Weilert has not claimed a constitutional right to the confidentiality of his medical records, and he has not provided any legal argument on appeal in support of the district court's ruling. In light of our duty to uphold statutes whenever possible, we certainly cannot hold that K.S.A. 60-227(b)'s limitations on the physician-patient privilege are unconstitutional on the showing made here.

II. *The District Court's Conclusion that HIPAA Precludes Admitting Weilert's Statement to Medical Personnel Is Erroneous.*

The district court separately determined that the admission of Weilert's statement to medical personnel was precluded by federal law, specifically the Health Insurance Portability and Accountability Act of 1996, commonly referred to as HIPAA. See Pub. L. 104-191, 110 Stat. 1936 (codified in various sections of 18, 29, and 42 U.S.C.) (1996). Under HIPAA, the United States Department of Health and Human Services has adopted a regulation that limits the disclosure of information about a patient's medical care. 45 C.F.R. § 164.512.

But the district court's ruling is wrong for two reasons. First, HIPAA does not prohibit the disclosure of information by court order, as was done here. Second, even if HIPAA prohibited the disclosure of Weilert's blood-test results, Kansas courts do not apply the exclusionary rule to preclude admitting the information into evidence.

HIPAA's privacy regulation specifically provides that information may be disclosed "in the course of any judicial or administrative proceeding" under court order. 45 C.F.R. § 164.512(e)(1)(i). In addition, the regulation provides that information may be disclosed specifically for law-enforcement purposes pursuant to a court order. 45 C.F.R. § 164.512(f)(1)(ii)(A). HIPAA disclosure orders are routinely entered even in civil cases. *E.g., Pratt v. Petelin,* 2010 WL 446474, at *4 (D. Kan. 2010) (unpublished opinion) (approving order for disclosing plaintiff's medical records over plaintiff's objection). Courts elsewhere have accordingly ruled that HIPAA does not preclude the disclosure of a patient's blood-test results pursuant to subpoena or court order. *E.g., Armstrong v. Com.,* 205 S.W.3d 230, 231-32 (Ky. App. 2006); *State v. Eichhorst,* 879 N.E.2d 1144, 1154-55 (Ind. App. 2008); *Kennemur v. State,* 280 S.W.3d 305, 312 (Tex. App. 2008), *cert. denied* 129 S. Ct. 2005 (2009).

Even if HIPAA prohibited disclosure of Weilert's blood-test results under court order, that prohibition would not lead to the exclusion of those results in a criminal trial. Our court held in *State v. Yenzer,* 40 Kan. App. 2d 710, Syl. ¶ 1, 195 P.3d 271 (2008), *rev. denied* 288 Kan. 836 (2009), that Kansas does not apply the exclusionary doctrine to exclude evidence when the evidence has been obtained in violation of HIPAA.

The district court wrongly concluded that HIPAA prohibited the admission into evidence of Weilert's blood-test results.

III. *Evidence of Weilert's Blood-Test Results Done for Medical Treatment and Obtained by the State Under Court Order Is Admissible.*

Like other states, Kansas has an implied-consent law under which motorists are deemed to have given consent to breath or

blood testing for alcohol by driving on Kansas roads. But that implied consent is not absolute: although a driver may face license suspension as a sanction, he or she still retains the right to refuse a breath or blood test when stopped by police.

Weilert argues that because a driver has the legal right to refuse forced testing by law-enforcement officers, the State may not otherwise obtain breath- or blood-test results. In support, Weilert cites *State v. Adee*, 241 Kan. 825, 740 P.2d 611 (1987), which held that the State could not use a search warrant to obtain a blood test after the driver had refused a breath test. The State responds that while *Adee* properly stands for the proposition that the State may not force a person to obtain testing after refusal, *Adee* doesn't hold that the State may not obtain test results the driver obtains independently for medical purposes. We agree.

Weilert has cited no provision of the Kansas Implied Consent Law that either prevents the State from obtaining test results that were produced for medical purposes or from introducing such results into evidence. We certainly cannot infer an intent to do so from the language the legislature has used; the legislature specifically directed in K.S.A. 2009 Supp. 8-1001(v) that the implied-consent law should be liberally construed to promote public safety. Moreover, inferring the intent Weilert seeks to superimpose on this statute would run counter to the clear intent of the legislature's limitation of the physician-patient privilege that has made it inapplicable in all DUI cases. As we noted at the front of this opinion, if evidence is relevant, it's admissible unless some statute provides otherwise. By eliminating the physician-patient privilege in DUI cases, the legislature has indicated its intention to leave no hurdle to admitting test results that provide evidence of a driver's alcohol consumption.

Weilert also cites *State v. Befort*, 2005 WL 81499 (Kan. App. 2005) (unpublished opinion), and a 2002 Kansas Attorney General Opinion, Att'y Gen. Op. No. 2002-26. *Befort* merely notes the *Adee* holding that the State may not use a search warrant to force a blood test after a driver has refused testing, and the Attorney General's opinion similarly concludes that law-enforcement officers may not force further testing once a driver has refused it. Neither stands

for the proposition Weilert argues here—that the State may not introduce into evidence test results the driver obtains independently for medical purposes.

With no hurdle to the admission of this evidence in the implied-consent law, the admissibility of Weilert's test result is an easy matter. The evidence is certainly relevant, and no statute precludes its admissibility. Our court so held in *State v. Mendoza*, 20 Kan. App. 2d 541, Syl. ¶ 1, 889 P.2d 1147, *rev. denied* 257 Kan. 1095 (1995) (the result of a blood test performed in a hospital at the driver's request was not subject to physician-patient privilege and was properly admitted into evidence in the DUI case). Weilert argues that *Mendoza* is factually distinguishable. He's correct that there was no test refusal in *Mendoza* before medical treatment occurred; the driver in *Mendoza* was tested in an emergency room while being treated for injuries suffered in an accident. We find no significance, however, to this factual distinction because we have concluded, for the reasons already stated, that the Kansas implied-consent statute does not contain any provision that limits the admissibility of test results obtained for medical purposes and not at the direction of law-enforcement personnel. The district court wrongly concluded that the blood-test results obtained at the hospital were inadmissible.

IV. *Evidence of Weilert's Statements Made to Physicians During Medical Treatment Is Admissible in a Felony DUI Prosecution.*

The district court separately ruled that Weilert's statements to medical personnel were inadmissible. That ruling was based on the district court's erroneous conclusion that the inability to claim a physician-patient privilege in felony DUI cases was unconstitutional. Weilert has not argued any other basis on appeal for upholding the district court's exclusion from evidence of statements Weilert made to medical personnel. We therefore conclude that the district court wrongly concluded that statements Weilert made to medical personnel were inadmissible.

The judgment of the district court is reversed, and the case is remanded for further proceedings.