No. 110,323

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

WILLIAM HOEFFNER, JR.
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

SYLLABUS BY THE COURT

1.

When reviewing the district court's ruling in a driver's license suspension case, an appellate court generally employs a substantial competent evidence standard of review. If the issues raise only questions of law, such as the interpretation of a statute, an appellate court exercises unlimited review.

2.

Substantial compliance with statutory notice provisions will usually be sufficient when advising a driver of his or her rights under the Kansas implied consent law, provided that the notice in question conveyed the essentials of the statute and did not mislead the driver.

3.

The extraction of a blood sample implicates constitutional guarantees against unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

1

4.

A search without a warrant is unreasonable unless it falls within one of several limited, well-defined exceptions to the warrant requirement, one of those exceptions being consent. For consent to be valid, there must be clear and positive testimony that consent was unequivocal, specific, and freely given and the consent must have been given without duress or coercion, express or implied.

5.

When consent to testing occurs in the wake of a threat to obtain a search warrant for such testing, the court will construe the threat as unlawful coercion that invalidates consent when there are not then grounds upon which a warrant could issue. Conversely, when an officer says that a warrant can be obtained and, in fact, there are grounds for the warrant to issue, the statement is correct and does not constitute coercion.

6.

When a statute is plain and unambiguous, courts must give effect to its express language rather than determine what the law should or should not be. Courts may not speculate on legislative intent and may not read the statute to add something not readily found in it. If the statute's language is clear, there is no need to resort to statutory construction. But even if the language of a statute is plain and unambiguous, courts still must harmonize or reconcile various provisions of an act together to avoid statutory interpretations that would be unreasonable or render legislation meaningless.

7.

A law enforcement officer may direct a medical professional to draw a sample of blood from a person when a person refuses to submit to and complete a test if (1) the person was operating or attempting to operate a vehicle, (2) the vehicle has been involved in an accident or collision resulting in serious injury or death of any person, and (3) the operator could be cited for any traffic offense.

8.

An officer is prohibited from obtaining a search warrant to extract blood after a person has refused to consent to a request to submit to blood-alcohol testing.

9.

The exclusionary rule does not apply in administrative driver's license suspension proceedings.

Appeal from Ford District Court; E. LEIGH HOOD, judge. Opinion filed September 12, 2014. Affirmed.

*John M. Linder*, of Linder, Marquez & Koksal, of Garden City, for appellant.

*John D. Schultz*, of Legal Services, Kansas Department of Revenue, for appellee.

Before BRUNS, P.J., PIERRON and STANDRIDGE, JJ.

STANDRIDGE, J.:  After leaving an incident at a casino, William Hoeffner, Jr., was arrested for driving under the influence. The arresting officers read him the required implied consent advisory before requesting he submit to a breath test. He refused to do so until the officers repeatedly indicated that they would obtain a search warrant for a blood test; then, he agreed to the breath test, which he failed. Although Hoeffner argued the officers unlawfully coerced him into submitting to a breath test by threatening to obtain a search warrant, his driving privileges were suspended. His suspension was affirmed after an administrative hearing. Hoeffner appealed the suspension to the district court, again claiming unlawful coercion and also that the hearing officer used an improper form, which rendered his suspension a nullity. The district court upheld the suspension.

Hoeffner appeals to us raising the same issues. We find no merit to Hoeffner's claim that the proceedings before the hearing officer were rendered a nullity based on

language in the form. But we agree with Hoeffner that the officers did not have legal grounds upon which to obtain a search warrant to draw Hoeffner's blood at the time the officers repeatedly advised Hoeffner that they intended to do so. The officers' misinformation transformed the breath test Hoeffner previously had refused to take into an involuntary search because it necessarily deprived Hoeffner of the opportunity to revoke his statutorily implied consent. Although the results of Hoeffner's failed breath test are the fruits of an unlawful seizure, our Supreme Court has long held that the exclusionary rule does not apply to suppress incriminating evidence in administrative driver's license suspension cases. Accordingly, we find substantial competent evidence to support the district court's finding that Hoeffner had an alcohol concentration of .08 or greater in his blood and, in turn, affirm the court's decision to uphold the agency's suspension of Hoeffner's license.

## FACTS

In late June 2011, Officer Daniel Hadovanic of the Dodge City Police Department responded to a call regarding a disorderly man at a casino. Dispatch stated that the man and a younger companion left the casino in a convertible. Officer Joan Addison offered to serve as Hadovanic's backup for the call and encountered the car first. After the car sat at a green light without immediately going forward, Addison initiated a traffic stop. Hoeffner was the driver.

Despite the fact that the car was a convertible, Addison noticed the odor of alcohol when she approached the car. Addison also noticed Hoeffner was very talkative, "hyped up," and that his eyes were watering—the "perfect demonstration of something you would teach a beginner . . . to look for in an impaired driver." When Hadovanic arrived on the scene, he also noticed the odor of alcohol and Hoeffner's bloodshot eyes. Hoeffner struggled to get out of the car when requested, and he admitted to Hadovanic that he had been drinking beer prior to the traffic stop.

4

Hadovanic administered field sobriety tests to Hoeffner, which he failed. Hoeffner refused a preliminary breath test, after which officers arrested him and transported him to the county jail. There, they read Hoeffner the applicable implied consent advisory and provided him a written copy, but when they requested Hoeffner to submit to a breath test, he refused. Hoeffner asked Hadovanic whether he should submit to the test, but Hadovanic replied that he could not give Hoeffner advice about whether to take it. During this time, one or both of the officers informed Hoeffner that if he did not submit to the breath test, they would obtain a search warrant for a blood test. In fact, at the time of Hoeffner's arrest, Dodge City police officers routinely attempted to obtain search warrants for blood tests after drivers refused to consent to a request for breath test. After a while, Hoeffner announced that if the officers were going to get a sample one way or another, he might as well submit to the breath test. When he again showed hesitation, the officers repeated that they intended to obtain a search warrant if Hoeffner failed to submit to and complete the test. Hoeffner ultimately acquiesced to the breath test, the results of which showed a blood-alcohol content of .215, nearly three times the legal limit.

Because he failed the test, Hoeffner's driving privileges were suspended. Hoeffner subsequently requested a hearing with the Kansas Department of Revenue (KDOR). Although originally scheduled for December 2011, the hearing was delayed until June 2012, over a year after Hoeffner failed the test. By this time, certain provisions of the Kansas implied consent law had changed, and the KDOR had revised its hearing form to conform to those changes.

Hoeffner claimed at the administrative hearing that the officers' statements about obtaining a search warrant if he continued to refuse testing was coercion that rendered his consent involuntary. The hearing officer apparently took the matter under advisement because Hoeffner later submitted a brief in support of his position. In the end, however, the hearing officer determined that Hadovanic "was merely stating protocol when he told

5

[Hoeffner] blood would be drawn upon refusal." The hearing officer affirmed Hoeffner's suspension.

Hoeffner then appealed the KDOR's decision to the Ford County District Court. Although Hoeffner raised approximately six issues before the district court, only two are relevant to this appeal: whether the KDOR erred by using the revised hearing form and whether the officers' statements regarding the potential search warrant constituted coercion. After hearing testimony and argument, the district court determined that the revised form did not change the penalty that applied to Hoeffner and that the officers provided Hoeffner with the correct implied consent notices at the time of his arrest. As such, any error by the KDOR in using the wrong form was harmless. With regard to the coercion issue, the district court determined that because the statements made by the officers regarding their ability to obtain a search warrant were true, the statements did not constitute coercion. The district court affirmed the suspension.

ANALYSIS

*The revised hearing form*

Hoeffner's first argument involves the hearing order form, which reflected changes in the law effective after his breath test. Hoeffner contends that using this form is such an egregious error that it renders the hearing's outcome a nullity. We disagree.

When reviewing the district court's ruling in a driver's license suspension case, this court generally employs a substantial competent evidence standard of review. *Schoen v. Kansas Dept. of Revenue*, 31 Kan. App. 2d 820, 822, 74 P.3d 588 (2003). However, when the issues raise only questions of law—such as the interpretation of a statute—this court exercises unlimited review. *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 629, 176 P.3d 938 (2008).

6

Hoeffner concedes that the implied consent notices provided to him on the night of his breath test complied with the law at the time. Hoeffner also concedes that he suffered no prejudice, as he received the penalty in effect in June 2010. The crux of Hoeffner's contention, then, is that the KDOR is required to strictly comply with the law such that any irregularity in its own internal processes, such as using the wrong form, irreparably taints the proceedings.

However, this assertion is unsupported by Kansas law. "[I]t is generally recognized that substantial compliance with statutory notice provisions will usually be sufficient" when advising a driver of his or her rights under the Kansas implied consent law, provided that the notice in question "conveyed the essentials of the statute and did not mislead the appellant." *Barnhart v. Kansas Dept. of Revenue*, 243 Kan. 209, 213, 755 P.2d 1337 (1988). This rule stems from the fact that the implied consent statute is a remedial statute, and such statutes are "to be liberally construed to effectuate the purpose for which [they were] enacted." *Smith v. Marshall*, 225 Kan. 70, Syl. ¶ 1, 587 P.2d 320 (1978); see also K.S.A. 2010 Supp. 8-1001(v) (establishing that implied consent statute is a remedial law). When, for example, an arresting officer read a driver an out-of-date implied consent advisory that warned her of significantly different penalties than those in effect at the time, our Supreme Court held the officer failed to substantially comply with the implied consent law. *Meigs v. Kansas Dept. of Revenue*, 251 Kan. 677, 681, 840 P.2d 448 (1992).

Obviously, these cases are factually distinguishable from the instant case as they discuss only the initial implied consent notices required by statute, not the hearing form used by the KDOR. However, the situations are analogous. Hoeffner was read the notices in effect at the time of his arrest and received the penalty applicable in June 2011. Hoeffner never even saw the form memorializing these facts until after the hearing. Nothing in the record suggests that the outcome of the hearing changed due to this technical irregularity, and, as previously stated, Hoeffner admits he suffered no prejudice.

7

To further analogize from other areas of the law, our Kansas Code of Criminal Procedure states that "[c]lerical mistakes in judgments, orders or other parts of the record . . . arising from oversight or omission may be corrected by the court at any time." K.S.A. 22-3504(2). The Kansas Rules of Civil Procedure allow a court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment." K.S.A. 2013 Supp. 60-260(a). It is clear that these statutes allow our Kansas courts to correct minor mistakes and oversights without the need for further proceedings. As it appears that the use of the wrong form was likely nothing more than oversight by the hearing officer, Hoeffner's argument that it renders the hearing officer's judgment a nullity is disingenuous in light of these other statutes. Hoeffner is, at most, entitled to a corrected or amended hearing order form, not a complete reversal of his suspension.

The KDOR substantially complied with the law in effect at the time of Hoeffner's breath test, and Hoeffner suffered no prejudice due to this technical irregularity. As such, we decline to vacate his suspension for this reason.

*Coercion*

The extraction of a blood sample implicates constitutional guarantees against unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United State Constitution. *Schmerber v. California*, 384 U.S. 757, 767, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966); *State v. Murry*, 271 Kan. 223, 226, 21 P.3d 528 (2001). A search without a warrant is unreasonable unless it falls within one of several limited, well-defined exceptions to the warrant requirement, one of those exceptions being consent. *State v. Thompson*, 284 Kan. 763, Syl. ¶ 11, 166 P.3d 1015 (2007). In *Thompson*, our Supreme Court stated that for consent to be valid "(1) there must be clear and positive testimony that consent was unequivocal, specific, and freely given and (2) the consent must have been given without duress or coercion, express or implied." 284 Kan. 763, Syl. ¶ 12.

8

Hoeffner claims his consent was not freely given but instead was coerced as a direct result of the officers' repeated words of warning that if Hoeffner would not submit to a breath test, the officers would apply for and obtain a search warrant to obtain a blood test. When consent to testing occurs in the wake of a threat to obtain a search warrant for such testing, like here, we will construe the threat as unlawful coercion that invalidates consent when "there were not then grounds upon which a warrant could issue." *State v. Brown*, 245 Kan. 604, 612, 783 P.2d 1278 (1989). Conversely, when an officer says that a warrant can be obtained and "in fact, there are grounds for the issuance of a warrant, the statement is correct and does not constitute coercion." 245 Kan. at 612-13. The threat is acceptable under these circumstances because it "'does not involve any deceit or trickery, but instead accurately informs the individual of his precise legal situation.'" 245 Kan. at 608 (quoting 2 La Fave, Search and Seizure § 8.2, pp. 648-49 [1978]).

Thus, in order to resolve Hoeffner's claim that his consent was unlawfully coerced, we necessarily must decide whether the officers lawfully could have obtained a search warrant to involuntarily extract blood from Hoeffner for purposes of alcohol testing. And because drawing a sample of blood from a person suspected of driving under the influence is governed by statute in Kansas, our decision is necessarily a matter of statutory interpretation, which is a legal issue appellate courts determine independently without any required deference to the district court. See *State v. Mason*, 294 Kan. 675, 676, 279 P.3d 707 (2012). When a statute is plain and unambiguous, courts must give effect to its express language rather than determine what the law should or should not be. Courts may not speculate as to legislative intent and may not read the statute to add something not readily found in it. If the statute's language is clear, there is no need to resort to statutory construction. But even if the language of a statute is plain and unambiguous, courts still must harmonize or reconcile various provisions of an act together to avoid statutory interpretations that would be unreasonable or render legislation meaningless. *State v. Urban*, 291 Kan. 214, 216, 239 P.3d 837 (2010); *Redd v. Kansas Truck Center*, 291 Kan. 176, 201, 239 P.3d 66 (2010).

9

A compelled blood draw after a refusal to consent to such testing is governed by the provisions of K.S.A. 2010 Supp. 8-1001, which provided in relevant part:

"(d) A law enforcement officer may direct a medical professional described in this section to draw a sample of blood from a person:
(1) If the person has given consent and meets the requirements of subsection (b);
(2) if medically unable to consent, if the person meets the requirements of paragraph (2) of subsection (b); or
(3) if the person refuses to submit to and complete a test, if the person meets the requirements of paragraph (2) of subsection (b)."

Because this provision summarily cross-references subsection (b) of the statute, we have inserted the cross-referenced language where appropriate and have designated the cross-referenced language by placing it in brackets:

"(d) A law enforcement officer may direct a medical professional described in this section to draw a sample of blood from a person:
(1) If the person has given consent and
[(1) If the officer has reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence . . . and one of the following conditions exists:
(A) The person has been arrested or otherwise taken into custody for any offense involving operation or attempted operation of a vehicle while under the influence . . .; or
(B) the person has been involved in a vehicle accident or collision resulting in property damage or personal injury other than serious injury; or
(2) if the person was operating or attempting to operate a vehicle and such vehicle has been involved in an accident or collision resulting in serious injury or death of any person and the operator could be cited for any traffic offense . . . .]; or
(3) if the person refuses to submit to and complete a test, [the person was operating or attempting to operate a vehicle and such vehicle has been

10

involved in an accident or collision resulting in serious injury or death of any person and the operator could be cited for any traffic offense . . . .]

(2) if medically unable to consent,

[(2) if the person was operating or attempting to operate a vehicle and such vehicle has been involved in an accident or collision resulting in serious injury or death of any person and the operator could be cited for any traffic offense . . . .]; or

(3) if the person refuses to submit to and complete a test

[(2) if the person was operating or attempting to operate a vehicle and such vehicle has been involved in an accident or collision resulting in serious injury or death of any person and the operator could be cited for any traffic offense . . . .].

Looking at the facts as they existed at the time the threat to obtain a search warrant was made, the officer's ability to draw blood was governed by K.S.A. 2010 Supp. 8-1001(d)(3) because Hoeffner already had refused to submit to and complete a test. Under the governing statute, then, the officer was permitted to direct a medical professional to draw a sample of blood from Hoeffner only if he (1) was operating or attempting to operate a vehicle, (2) the vehicle had been involved in an accident or collision resulting in serious injury or death of any person, and (3) he could be cited for any traffic offense. But Hoeffner's vehicle had not been involved in an accident, let alone an accident resulting in serious injury or death of a person. Thus, in the wake of Hoeffner's refusal to consent to the request for testing, the officer was not permitted to direct a medical professional to draw a sample of blood from Hoeffner. See *State v. Weilert*, 43 Kan. App. 2d 403, 410, 225 P.3d 767 (2010) (applying K.S.A. 8-1001[d][3], court held that in the absence of evidence driver of vehicle was in an accident involving serious injury or death, officers may not facilitate the forced withdrawal of a sample of blood from the driver for purposes of a criminal proceeding); *Cook v. Olathe Medical Center, Inc.*, 773 F. Supp. 2d 990, 1002 (D. Kan. 2011) (same).

11

Although our conclusion today is supported by the plain and unambiguous language of K.S.A. 2010 Supp. 8-1001(d)(3), another panel of our court recently held the statute does not apply in those instances when the officer has probable cause to obtain a search warrant after a refusal. *City of Dodge City v. Webb*, 50 Kan. App. 2d __, 329 P.3d 515, 522 (2014), *petition for rev. filed* July 9, 2014. The panel acknowledged that the statute expressly prohibits the officer from directing a medical professional to draw blood, yet went on to conclude that the statute was inapplicable as a matter of law when the officer obtains a search warrant supported by probable cause. In support of this legal conclusion, the panel found that when an officer is executing a search warrant it is the judge directing the medical professional to draw blood and not the officer. See 329 P.3d at 522. But the panel's conclusion is not supported by the plain language of the statute. Whether accomplished in the course of executing a warrant signed by a magistrate upon probable cause or without a warrant at all, at the end of the day it is still a law enforcement officer on the scene who directs the medical professional to draw the blood, an act expressly prohibited by the language of K.S.A. 2010 Supp. 8-1001(d)(3).

By construing the statutory language to create a search warrant exception to the ban on nonconsensual blood-alcohol testing after a refusal, the *Webb* panel not only moved beyond the plain and unambiguous language of the statute in a manner contrary to clear legislative intent, but it also rejected well-settled Kansas law on the issue. In *State v. Adee*, 241 Kan. 825, 829-30, 740 P.2d 611 (1987), the Kansas Supreme Court was called on to decide whether a new provision within the implied consent statute created an exception to the long-standing ban against seeking a search warrant for blood samples from persons refusing to consent to testing. Added as subsection (g) of the statute, this new provision stated: "Nothing in this section shall be construed to limit the admissibility at any trial of alcohol or drug concentration testing results obtained pursuant to a search warrant." K.S.A. 1986 Supp. 8-1001(g). Relying on legislative history, the *Adee* court determined that subsection (g) was not intended to create a search warrant

12

exception to the existing statutory provision that prohibited blood-alcohol testing after a refusal:

> "We believe that the intention of subsection (g) as enacted was not to change existing law as to the prohibition against the issuance of search warrants for DUI suspects refusing alcohol concentration testing, but rather to clarify that nothing in the implied consent statute (K.S.A. 1986 Supp. 8-1001) rendered alcohol concentration test results from search warrants issued under some other authority inadmissible in DUI trials. Conceivably, a search warrant for a blood sample could be issued for a suspect of some crime other than DUI. If so, and the results were relevant to a DUI charge against the same individual, then (g) states that nothing in the implied consent statute (K.S.A. 1986 Supp. 8-1001) renders such results inadmissible in the DUI trial." *Adee*, 241 Kan. at 832.

Citing *Adee* as controlling precedent, the panel in *Webb* agreed that the pre-2008 version of the implied consent statute prohibited an officer from obtaining a search warrant to compel a blood sample after a defendant refused testing. Nevertheless, the panel ultimately concluded that both the legal analysis and the holding in *Adee* were no longer controlling because the Kansas Legislature eliminated subsection (h) of the implied consent statute—the language prohibiting additional testing after a refusal—in its 2008 revisions:

> "[I]n 2008, the Kansas Legislature revised the implied consent statute further and eliminated subsection (h) entirely, changing the calculus in our view. . . . Because the Kansas Legislature took out the language prohibiting additional testing after a refusal, . . . the statute now allows for additional testing after a refusal." *Webb*, 329 P.3d at 522.

The panel claimed that its conclusion in this regard was "bolstered by the language in K.S.A. 2011 Supp. 8-1001(t), which states: 'Nothing in this section shall be construed to limit the admissibility at any trial of alcohol or drug concentration testing results obtained pursuant to a search warrant.'" 329 P.3d at 522.

13

We disagree with the conclusion reached by the panel in *Webb*. First, the Kansas Legislature did not eliminate—but merely repositioned—the language prohibiting additional testing after a refusal in its 2008 revisions. Second, the search warrant language in subsection (t) of the statute, which was quoted by the panel to bolster its conclusion, is the precise language considered by the Supreme Court in *Adee* in determining that the legislature did *not* intend to create a search warrant exception to the existing statutory provision that prohibited blood-alcohol testing after a refusal.

Prior to revisions in 1986, the following provision in the implied consent statute had always been construed to prohibit an officer from obtaining a search warrant from a neutral magistrate for nonconsensual blood-alcohol testing after a request for consent to testing had been refused:

> "After giving [the required oral and written notices], a law enforcement officer shall request the person to submit to testing. The selection of the test or tests shall be made by the officer. *If the person refuses to submit to and complete a test as requested pursuant to this section, additional testing shall not be given . . . .*" (Emphasis added.) K.S.A. 1986 Supp. 8-1001(f)(1).

When revising the statute in 1986, the legislature added subsection (g), which stated: "Nothing in this section shall be construed to limit the admissibility at any trial of alcohol or drug concentration testing results obtained pursuant to a search warrant." K.S.A. 1986 Supp. 8-1001(g).

As noted above, the issue presented to the court for determination in *Adee* was whether the legislature intended subsection (g) to create a search warrant exception to the statutory ban on nonconsensual blood-alcohol testing after refusal. Noting that new subsection (g) spoke only to admissibility at trial of test results obtained by a search warrant, the court began its analysis by reviewing the legislative history relevant to subsection (g) as originally introduced, which provided:

14

"'(g) Nothing in this section shall be construed to limit the admissibility at any trial of alcohol or drug concentration testing results obtained pursuant to a search warrant. A search warrant permitting alcohol or drug concentration testing may be issued only upon a showing that a law enforcement officer has probable cause to believe the person was operating a motor vehicle while under the influence of alcohol or drugs and the motor vehicle was involved in an accident resulting in death or serious personal injury likely to result in death.' See SB 127 [1985], as Amended by Senate Committee of The Whole, and House Federal and State Affairs Committee, at 7." *Adee*, 241 Kan. at 832.

The *Adee* court determined from its review of the original bill that the legislature did not intend to create a search warrant exception to the existing statutory provision that prohibited blood alcohol testing after a refusal but instead intended to clarify that nothing in the implied consent statute rendered alcohol concentration test results arising out of search warrants issued under *some other authority* inadmissible in DUI trials. 241 Kan. at 832.

In an apparent reaction to the holding in *Adee*, the Kansas Legislature amended K.S.A. 8-1001 in the next legislative session. Among other additions, the amended version of the statute contained a new qualification concerning what occurs following a test refusal:

"If the person refuses to submit to and complete a test as requested pursuant to the section, additional testing shall not be given unless the certifying officer has probable cause to believe that the person, while under the influence of alcohol or drugs, or both, has operated a motor vehicle in such a manner as to have caused the death of or serious injury to another person. In such event, such test or tests may be made pursuant to a search warrant issued under the authority of K.S.A. 22-2502 and amendments thereto or without a search warrant under the authority of K.S.A. 22-2501 and amendments thereto." K.S.A. 1988 Supp. 8-1001(f)(1).

15

In 2001, the legislature reorganized this version of the provision and separated it into two subsections:

> "(h) After giving the foregoing information, a law enforcement officer shall request the person to submit to testing. The selection of the test or tests shall be made by the officer. If the person refuses to submit to and complete a test as requested pursuant to this section, additional testing shall not be given unless the certifying officer has probable cause to believe that the person, while under the influence of alcohol or drugs, or both, has operated a vehicle in such a manner as to have caused the death of or serious injury to another person. . . .
>
> . . . .
>
> "(k) An officer shall have probable cause to believe that the person operated a vehicle while under the influence of alcohol or drugs, or both, if the vehicle was operated by such person in such a manner as to have caused the death of or serious injury to another person. In such event, such test or tests may be made pursuant to a search warrant issued under the authority of K.S.A. 22-2502, and amendments thereto, or without a search warrant under the authority of K.S.A. 22-2501, and amendments thereto." K.S.A. 8-1001.

In 2008, the legislature made major revisions to the implied consent statute. See L. 2008, ch. 170, sec. 1 The most significant revision was an amendment made to subsection (b) of the statute. Before 2008, an officer was required to ask a person to submit to blood-alcohol testing when the officer had reasonable grounds to believe a person was operating or attempting to operate a vehicle while under the influence of alcohol or drugs and either (a) the person was in custody or had been arrested for a DUI offense or (b) the person had been involved in a car accident resulting in property damage, personal injury, or death. After 2008, however, the statute required an officer to ask a person to submit to blood-alcohol testing when (1) the officer had reasonable grounds to believe a person was operating or attempting to operate a vehicle while driving under the influence and either (a) the person was in custody or had been arrested for a DUI offense or (b) the person had been involved in a car accident resulting in property damage or a personal injury other

16

than serious injury; or (2) the person was operating or attempting to operate a vehicle and the vehicle was involved in an accident resulting in serious injury or death and the operator could be cited for any traffic offense. K.S.A. 2008 Supp. 8-1001(b). The statute provides that the traffic offense violation shall constitute probable cause for purposes of paragraph (2).

The significance of the 2008 amendment is that under subsection (b)(2), an officer is not only authorized, but required, to ask a person to consent to a blood draw for purposes of alcohol testing without the officer having any suspicion, let alone reasonable grounds or probable cause, to believe that the driver was under the influence of drugs or alcohol. Eliminating the requirement that an officer have reasonable grounds to believe a person is driving under the influence before making a request to submit to blood-alcohol testing represents a significant shift in the law, as this requirement was a constitutional safeguard included in the statute when it was originally enacted in 1955 and remained firmly entrenched for over 50 years until the amendment in 2008. To that end, a panel of this court recently held that this particular portion of the statute—see K.S.A. 2011 Supp. 8-1001(b)(2) requiring a search and seizure absent probable cause to believe the person was operating or attempting to operate a vehicle under the influence of drugs or alcohol—was unconstitutional "to the extent it requires a search and seizure absent probable cause." *State v. Declerck*, 49 Kan. App. 2d 908, 919, 317 P.3d 794 (2014) (finding traffic infraction plus an injury or fatality, without more, did not constitute probable cause that drugs or alcohol were involved in the accident).

In addition to the significant changes it made to subsection (b), the legislature also modified existing language, added additional provisions, and then reorganized the subsections within the entire statute by subject matter. We have summarized this reorganization in the following table, which compares the subject matter for each of the alphabetically designated subsections of the 2007 version of the statute to the subject matter for that subsection of the 2008 version:

17

|     | **K.S.A. 2007 Supp. 8-1001** | **K.S.A. 2008 Supp. 8-1001** |
| --- | --- | --- |
| (a) | Implied consent. | Implied consent. |
| (b) | Request for testing; grounds. | Request for testing; grounds. |
| (c) | Blood test at the direction of an officer.<br>•who authorized to extract<br>•reliance on written statement from officer<br>•when medical personnel immune from liability | Blood test at the direction of an officer.<br>•who authorized to extract |
| (d) | Requesting urine test; when. | Blood test at the direction of an officer.<br>•when driver voluntarily consents<br>•when driver medically unable to consent<br>•when driver refuses to consent<br>    *No testing after refusal: Officer may direct a blood draw after a refusal only if (1) person was operating or attempting to operate a vehicle, (2) that was involved in an accident resulting in serious injury or death, and (3) operator could be cited for traffic offense.* |
| (e) | Officer immune from liability, when. | Blood test at the direction of an officer.<br>•reliance on written statement from officer<br>•when medical personnel immune from liability |
| (f) | Duty to provide driver notice.<br>•noncommercial drivers<br>•drivers over 21 | Blood test at the direction of officer.<br>•sample must be independent of medical sample. |
| (g) | Duty to provide driver notice.<br>•drivers of commercial vehicle<br>•drivers under 21. | Restraint of person to collect sample.<br>•acceptable practices |
| (h) | License suspension for test refusal or failure.<br>    *No testing after refusal: No additional testing after refusal unless (1) officer has probable cause to believe that the person was operating a vehicle (2) while under the influence of alcohol or drugs, or both (3) in such a manner as to have caused the death of or serious injury to another person.* | Requesting urine sample; when. |
| (i) | Refusal shall be admissible in evidence. | Collecting urine sample. |

| (j) | Disqualification/license suspension.<br>•driver of commercial vehicle. | Officer immune from liability, when. |
|---|---|---|
| (k) | Probable cause to believe person DUI if vehicle operated in a manner to have caused the death or serious injury to a person. In such event, test may be made pursuant to a search warrant under K.S.A. 22-2502 or without a search warrant under K.S.A. 22-2501. | Duty to provide driver notice.<br>•noncommercial drivers<br>•drivers over 21 |
| (l) | Failure to provide adequate sample = refusal. | Duty to provide driver notice.<br>•drivers of commercial vehicle<br>•drivers under 21 |
| (m) | Failure to understand notice is not a defense. | License suspension for test failure (BAC $\geq$ .08). |
| (n) | Test results will not be suppressed due to technical irregularities in consent or notice provided. | Refusal shall be admissible in evidence. |
| (o) | Nothing in this section should be construed to limit admissibility of any testing results obtained pursuant to a search warrant. | Disqualification/license suspension<br>•driver of commercial vehicle |
| (p) | Upon request, test results shall be made available to any person who submitted to testing. | Probable cause to believe person DUI if vehicle operated in a manner to have caused the death or serious injury to a person. In such event, test may be made pursuant to a search warrant under K.S.A. 22-2502 or without a search warrant under K.S.A. 22-2501. |
| (q) | Remedial law to be construed liberally. | Failure to provide adequate sample = refusal. |
| (r) | | Failure to understand notice is not a defense. |
| (s) | | Test results will not be suppressed due to technical irregularities in consent or notice provided. |
| (t) | | Nothing in this section should be construed to limit admissibility of any testing results obtained pursuant to a search warrant. |
| (u) | | Upon request, test results shall be made available to any person who submitted to testing. |
| (v) | | Remedial law to be construed liberally. |
| (w) | | Serious injury defined. |

Critical to the issue presented here, and as the italicized language in the table reflects, the legislature repositioned the provision relating to when additional testing can

be given after a person already has refused to submit to a test. In previous versions of the statute, the provision prohibiting additional testing after a refusal was positioned in the same subsection (subsection [h]) that required officers to request testing after providing the required notice and to suspend a license for a refusal to submit to testing. In the 2008 revision, however, the legislature opted to reposition the "no testing after refusal" component of subsection (h), which was the provision dedicated to license suspension for test refusal or failure, moving it to subsection (d), which is the provision that is specifically dedicated to the authority of law enforcement to direct a medical professional to draw a sample of blood. See K.S.A. 2008 Supp. 8-1001(d)(3). As the table also reflects, the provision regarding testing with or without a search warrant based on probable cause to believe the driver is driving under the influence when there was an accident causing death or serious injury was moved from subsection (k) to subsection (p) and the "[n]othing in this section shall be construed to limit admissibility at any trial of alcohol or drug concentration testing results obtained pursuant to a search warrant" language was moved from subsection (o) to subsection (t). See K.S.A. 2008 Supp. 8-1001(p), (t).

Based on the discussion above, and completely contrary to the conclusion reached by the panel in *Webb*, the 2008 revisions to the implied consent statute did not eliminate—but merely repositioned—the language prohibiting additional testing after a refusal. And contrary to the *Webb* panel's conclusion that new subsection (t) bolsters its conclusion, our discussion makes clear that the search warrant language in that subsection was merely repositioned by the legislature from subsection (o) and is the exact same provision at issue when our Supreme Court held in *Adee* that the legislature did *not* intend to create a search warrant exception to the existing statutory provision that prohibited blood-alcohol testing after a refusal.

The language set forth in implied consent statute as revised in 2008 is plain and unambiguous; thus, there is no need to resort to statutory construction. Giving effect to

20

the express language used by the legislature when it revised the statute in 2008, as well as the firmly entrenched Supreme Court precedent that remains unaffected by these statutory revisions, we conclude that the implied consent statute continues to prohibit an officer from obtaining a search warrant after a test refusal. Notably, our conclusion in this regard is entirely consistent with the public policy underlying the statute. Critical to the fundamental principles upon which the concept of implied consent is based, a refusal to consent occurs only after an officer makes a request for consent to submit to testing. And if the driver consents, the subsequent testing falls within the consent exception to the warrant requirement. See *State v. Thompson*, 284 Kan. 763, Syl. ¶ 11, 166 P.3d 1015 (2007). The consent to testing is implied, not actual, and if submission is not forthcoming, then the legislature has implemented various provisions by which to coerce the consent through knowledge and fear of adverse consequences. *State v. Bristor*, 236 Kan. 313, 319, 691 P.2d 1 (1984). But as set forth below, the adverse consequences utilized by our legislature to coerce this consent do not include physically forcing consent to testing against the driver's will, absent exigent circumstances.

If a driver refuses to consent to testing, an officer may direct medical personnel to draw blood from the driver without a warrant under K.S.A. 2010 Supp. 8-1001(d) only if the driver was operating or attempting to operate a vehicle that was involved in an accident resulting in serious injury or death and the driver could be cited for any traffic offense. If the criteria for drawing blood is not met, the test refusal stands and, under K.S.A. 2010 Supp. 8-1002(a), the law enforcement officer must certify that (1) there were reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol or drugs, or both, (2) the person had been placed under arrest, was in custody, or had been involved in a vehicle accident or collision, (3) a law enforcement officer had presented the person with the oral and written notice required by K.S.A. 2010 Supp. 8-1001, and (4) the person refused to submit to and complete a test as requested by a law enforcement officer. If the Division of Vehicles within the KDOR finds that the officer's certification meets the statutory requirements,

21

the Division is required to suspend the person's driving privileges. K.S.A. 2010 Supp. 8-1002(f). The suspension imposed is governed by K.S.A. 2010 Supp. 8-1014(a):

> "(1) On the person's first occurrence, suspend the person's driving privileges for one year and at the end of the suspension, restrict the person's driving privileges for one year and at the end of the suspension restrict the person's driving privileges for one year to driving only a motor vehicle equipped with an ignition interlock device;
>
> "(2) on the person's second occurrence, suspend the person's driving privileges for two years;
>
> "(3) on the person's third occurrence, suspend the person's driving privileges for three years;
>
> "(4) on the person's fourth occurrence, suspend the person's driving privileges for 10 years; and
>
> "(5) on the person's fifth or subsequent occurrence, revoke the person's driving privileges permanently."

In addition to a loss of driving privileges, a refusal can be admitted as evidence at a criminal DUI trial. Although not applicable to this case, as of July 1, 2012, it is also a separate crime to refuse to consent to testing if, at any time on or after July 1, 2001, the arrestee had previously refused a test or had been convicted of, or entered into a diversion program for, a DUI. K.S.A. 2013 Supp. 8-1025. Under the new criminal refusal law, the penalties for refusal are equal to or greater than the penalties for driving under the influence.

Given the well-established statutory framework that has long existed for those drivers who refuse to consent to testing, as well as the nature of the penalties that have been imposed by the legislature for years on those drivers, the implied consent law in Kansas has always been construed as one that provides an effective means of overcoming a driver's refusal to consent to testing without resorting to physical force, absent those exceptional circumstances designated by statute. *Furthmyer v. Kansas Dept. of Revenue*, 256 Kan. 825, 835, 888 P.2d 832 (1995); *Adee*, 241 Kan. at 831; *Bristor*, 236 Kan. at

319; *State v. Garner*, 227 Kan. 566, 571-72, 608 P.2d 1321 (1980); *State v. Weilert*, 43 Kan. App. 2d 403, 410, 225 P.3d 767 (2010). Obtaining a search warrant for chemical testing after a refusal to consent to testing presumably will involve varying degrees of physical restraint in order to extract blood against a person's will, which directly contradicts such a construction.

Based on the implied consent statute itself, the well-established precedent from our Supreme Court, and the public policy underlying implied consent principles, we conclude an officer is prohibited from obtaining a search warrant to extract blood after a person has refused to consent to a request to submit to blood-alcohol testing. Given this conclusion, the officers in this case erroneously informed Hoeffner that they could obtain a search warrant to involuntarily extract blood from him for purposes of alcohol testing if he did not change his mind and voluntarily submit to testing. Because the officers did not have legal grounds upon which to obtain a warrant, we necessarily construe the officers' threat to obtain a warrant as unlawful coercion that invalidated Hoeffner's consent. See *State v. Brown*, 245 Kan. 604, 612, 783 P.2d 1278 (1989). Because Hoeffner did not voluntarily consent to the testing upon which the decision to suspend his driver's license was based, we next turn to the issue of remedy.

*Remedy*

A Fourth Amendment violation does not automatically trigger the exclusionary rule; rather, the rule applies only where the benefit of deterrence outweighs the rule's "'substantial social costs.'" *Davis v. United States*, 564 U.S. __, 131 S. Ct. 2419, 2427, 180 L. Ed. 2d 285 (2011) (quoting *United States v. Leon*, 468 U.S. 897, 907, 104 S. Ct. 3405, 82 L. Ed. 2d 677 [1984]). Critical to the outcome of this case, our Supreme Court has held that the exclusionary rule should not be applied in administrative driver's license suspension proceedings arising out of an arrest for driving under the influence. *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 641, 646, 176 P.3d 938 (2008). This is because

23

the deterrent purpose of the rule in fostering constitutionally correct conduct on the part of government agents may be sufficiently assured by excluding evidence from any related prosecution for the DUI offense itself. 285 Kan. 625, Syl. ¶ 8. Thus, even if the officer violated Hoeffner's constitutional rights in obtaining the breath test after his refusal, the test results reflecting that Hoeffner had an alcohol concentration of .08 or greater in his blood were admissible in both administrative and court proceedings relating to the suspension of his driver's license. As such, we find substantial competent evidence supports the district court's decision to uphold the suspension of Hoeffner's license.

Affirmed.

* * *

BRUNS, J., concurring:  I agree that there is no merit to Hoeffner's claim of error arising out of the proceedings before the administrative hearing officer, and I agree that there is substantial competent evidence to support the district court's decision to suspend Hoeffner's driver's license. I write separately, however, because I believe it is unnecessary for us to reach the issue of whether a law enforcement officer is prohibited from seeking a search warrant from a judge to extract blood after a person has refused to submit to blood-alcohol testing.

As the majority recognizes, the exclusionary rule is not applicable under the circumstances presented in this administrative action. See *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 641, 176 P.3d 938 (2008). As such, there is no reason to offer an advisory opinion regarding the issue of whether a law enforcement officer can—upon the showing of probable cause—obtain a search warrant from a neutral and detached magistrate for blood testing after a driver's refusal to submit to a breath test. Rather, as the Kansas Supreme Court suggested in *Martin*, I believe this issue should be resolved in

24

any criminal prosecution that may arise out of the same incident—not in a driver's license suspension action. See 285 Kan. 625, Syl. ¶ 8.