NOT DESIGNATED FOR PUBLICATION

Nos. 111,937
111,938
112,021

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROBERT KAFKA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Crawford District Court; A.J. WACHTER, JR., judge. Opinion filed December 18, 2015. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Michael Gayoso, Jr.*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., MCANANY and BUSER, JJ.

BUSER, J: In this consolidated appeal, Robert Kafka appeals the district court's revocation of his probation in Crawford County case Nos. 08CR60P, 08CR511G, and 08CR560G. Kafka complains of the insufficiency of evidence to support revocation, the district court's denial of his request for reinstatement, and the court's decision to bypass the intermediate sanctions set forth in K.S.A. 2013 Supp. 22-3716(c). Kafka also contends the district court imposed an illegal sentence because it neglected to waive his postrelease supervision period. Finding no reversible error, we affirm the district court.

1

We begin by summarizing the facts relevant to the three individual criminal cases involved in this appeal.

*Case No. 08CR60P*

In keeping with a plea agreement, Kafka pled guilty to three counts of giving a worthless check, and on September 4, 2008, the district court sentenced him to 12 months' probation, under the supervision of court services, with an underlying prison term of 9 months followed by 12 months' postrelease supervision. Kafka was ordered to pay restitution in the amount of $14,239.83, plus court costs and to make minimum monthly payments of $100 on this obligation as a condition of his probation.

Several months later, however, Kafka stipulated to violating his probation by failing to report to his court services officer (CSO) as directed; neglecting to notify his CSO of his current mailing address and living arrangements; and failing to make his court-ordered minimum monthly payments. At the request of Kafka and the State, the district court revoked, reinstated, and extended Kafka's probation under the supervision of community corrections. The district court also ordered Kafka to make $200 monthly minimum payments towards his outstanding financial obligations.

On January 5, 2010, Kafka again stipulated to violating his probation by (1) failing to report to his intensive supervision officer (ISO) on four occasions; (2) making only one $200 payment in April 2009, and not beginning paying monthly until September 2009; and (3) failing to provide a urinalysis (UA). Once again, in keeping with the parties' agreement, Kafka stipulated to the violations, and the district court revoked and reinstated his probation with the imposition of a 30-day, shock-time-jail sanction. The district court reiterated its previous order that Kafka make monthly payments of $200, and the court

specified that if he missed a payment he would be arrested and held until he posted a $200 cash bond.

Kafka had repeated difficulties complying with the district court's payment schedule. Beginning in April 2011, and continuing through December 2013, on four separate occasions the district court ordered Kafka jailed for nonpayment until cash bonds were posted and paid towards restitution.

*Case No. 08CR511G and Case No. 08CR560G*

Pursuant to plea negotiations, Kafka pled guilty to two counts of theft in case No. 08CR560G and one count of theft in case No. 08CR511G. Kafka's convictions originated from construction-related scams wherein he accepted retainers for home improvement projects and never performed or completed the contracted work.

On July 10, 2009, the district court sentenced Kafka, in case No. 08CR560G, to 12 months' probation, under the supervision of community corrections, with an underlying prison term of 16 months followed by 12 months' postrelease supervision. That same day, the district court held Kafka's sentencing hearing in case No. 08CR511G and granted Kafka probation for 12 months, with an underlying prison term of 10 months followed by 12 months' postrelease supervision. The district court ran Kafka's sentences consecutive to each other and to his sentence in case No. 08CR60P.

The district court ordered Kafka to pay restitution in the amount of $19,435.92 plus court costs in case No. 08CR560G and restitution in the amount of $113,510.33 plus court costs in case No. 08CR511G. In addition to the standard probationary conditions, the district court ordered that "[Kafka] shall provide [his] ISO with monthly statements verifying income—if [Kafka] makes more than $2400 per month, he shall pay at a minimum 25% of any amount over $2400 towards restitution."

*Revocation of Probation in all Three Criminal Cases*

In all three cases, Kafka voluntarily consented to several 12-month extensions of his probation because he needed additional time to satisfy his court-imposed financial obligations and to complete the community corrections program. But on February 18, 2014, the State filed a motion to revoke Kafka's probation in each case, alleging that he had failed to "cooperate with [his] ISO, at [his] own expense, in any plan for alcohol, drug, psychiatric, or psychological testing, counseling, treatment, or rehabilitative program." This violation was based on Kafka receiving an unsuccessful discharge from the Options Treatment Center (Options) on February 14, 2014, for "trying to manipulate staff to get what he wanted, not taking any direction from staff, and not following the rules of the program."

One month later, the State filed an amended motion to revoke, which alleged the following additional violations: (1) Kafka failed to report to his ISO as directed on two occasions, September 13, 2013, and October 1, 2013; (2) Kafka had not maintained gainful employment and had been unemployed since August 27, 2013; (3) Kafka neglected to make restitution payments in case Nos. 08CR560G and 08CR511G, and he owed an outstanding balance of $3,631.83 in case No. 08CR60P; and (4) Kafka submitted UAs on August 30, 2013, and September 24, 2013, which were positive for methamphetamine.

The district court held a revocation hearing on March 18, 2014, at which Jaisa Scott, Kafka's ISO, and Kafka testified. Scott testified that she no longer believed community corrections was a suitable option for Kafka, and she stated: "I believe if he is given the opportunity he will put other community members at risk due to his past behaviors."

4

Scott established numerous probation violations. First, she explained that Kafka had not yet completed his community service hours; Kafka still had 47 hours left because he had only performed 3 hours in the past 5 years. Second, Scott claimed that Kafka failed to maintain employment, as he had been unemployed since August 2013. Third, Kafka had not reported to Scott as directed. Fourth, Kafka had not paid restitution. He owed $3,631.83 in case No. 08CR60P, and he had not made any payments on either of his other cases. Fifth, while the district court had prohibited Kafka from accepting retainers from clients, Scott believed that Kafka had civil judgments against him, for issues similar to those which led to his convictions, that totaled "over [$]25,000."

Finally, Scott testified that Kafka submitted two positive UAs for methamphetamine and he had not cooperated with her regarding alcohol, drug, psychiatric, or psychological testing; counseling; treatment; or rehabilitative programs. In particular, Scott directed Kafka to obtain an assessment to determine if he was qualified for treatment based on a positive UA on September 24, 2013, but Kafka did not follow through with this order until January 14, 2014. Then, Kafka arrived 1 day late for his inpatient treatment and he failed to complete the Options program, which resulted in his discharge from the facility.

Kafka testified on his own behalf. He claimed his noncompliance was due to circumstances beyond his control. In particular, Kafka insisted he had been "hospitalized probably six different times" since August due to several debilitating medical conditions. Kafka maintained he had attempted to provide Scott with the appropriate paperwork to document his medical problems, but Scott denied receiving any documentation recently. Scott also indicated that when Kafka was in custody in Crawford County prior to entering treatment, Todd Carl with Community Health informed her that Kafka had claimed "he had improved since being in custody due to getting healthier by gaining weight and he was actually getting better and had not deteriorated."

5

Regarding the State's allegations, Kafka testified that while he still had 47 community service hours to complete, he did complete more than 3 hours. Additionally, although Kafka believed he was "[$]200 in the arrears" on his restitution payments for case No. 08CR60P, he insisted he had other financial obligations, including child support for seven of his nine children. Kafka then conceded that he had missed two appointments with Scott, but he maintained he had been unable to attend because he was "[v]ery sick and then hospitalized." While Kafka admitted he had been unemployed, he testified that he had attempted to obtain employment. Kafka insisted that due to his poor health he was unable to work. Moreover, his lack of employment was also because he had "been in and out of jail since August."

Regarding substance abuse treatment, Kafka claimed the delay in his completion of the assessment was due to his health problems and repeated trips to jail. He maintained that he had to report 1 day late to Options because he did not have transportation. Kafka asserted that Options discharged him because of his back problems. According to Kafka, he tried to obtain a postponement or waiver of his treatment because he needed medical attention for his back and his mother was having knee surgery, but he was never able to resolve this issue because law enforcement removed him from Options on a Crawford County warrant. Kafka also admitted that while he did use methamphetamine for about a year, he had not submitted any negative UA's since September 24, 2013, because he had not been using illegal narcotics.

Kafka requested reinstatement because he believed that if he could surpass his medical hurdles, he would be able to successfully comply with his probation. The district court, however, found that Kafka was no longer amenable to probation; consequently, the court revoked his probation in all three cases and ordered him to serve his underlying sentences.

6

Kafka filed timely appeals in all three cases, which our court consolidated for appellate review.

Kafka contends the State failed to prove by a preponderance of the evidence that he violated his probation by: (1) failing to make payments on his court-ordered financial obligations and (2) receiving additional civil judgments against him, an allegation for which he claims he did not receive notice prior to the revocation hearing in violation of his due process rights.

To revoke a defendant's probation, the State must first establish commission of a violation by a preponderance of the evidence. *State v. Gumfory*, 281 Kan. 1168, 1170, 135 P.3d 1191 (2006). This burden "is established when the evidence demonstrates a fact is more probably true than not true. [Citation omitted.]" *State v. Inkelaar*, 38 Kan. App. 2d 312, 315, 164 P.3d 844 (2007), *rev. denied* 286 Kan. 1183 (2008). When reviewing factual determinations, this court employs the substantial competent evidence standard. 38 Kan. App. 2d at 315. Substantial evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. May*, 293 Kan. 858, 862, 269 P.3d 1260 (2012), *superseded by statute on other grounds as stated in City of Dodge City v. Webb*, 50 Kan. App. 2d 393, 329 P.3d 515 (2014), *rev. granted in part on other grounds* June 29, 2015.

Once the State has proven a violation of the conditions of probation, revocation is within the sound discretion of the district court. *Gumfory*, 281 Kan. at 1170. A judicial action constitutes an abuse of discretion if it is (1) arbitrary, fanciful, or unreasonable, *i.e.*, no reasonable person would have taken the view adopted by the court; (2) guided by an erroneous legal conclusion; or (3) based upon an error of fact. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014).

7

Although Scott testified as to Kafka's payment history and her belief that he had civil judgments against him, the record reveals the district court did not revoke Kafka's probation on these grounds. The journal entries indicate the district court revoked Kafka's probation because Kafka "[f]ailed to report; failed to obtain employment; failed to successfully complete treatment; [and] tested positive for meth." Similarly, the district judge's comments at the revocation hearing suggest that he based his decision upon Kafka's inability to comply with Scott's directives and remain drug free:

"Well, Mr. Kafka has been on probation for a long time. There's been numerous efforts made by everybody to accommodate Mr. Kafka so that he could successfully complete that. It's obvious to me that he hasn't and he can't and that I'm not very impressed with Mr. Kafka's testimony. You can say these are reasons but you have meth in your system on two occasions when you say you were in the hospital, I see nothing further to do. I think the probation people have [done] their best and they've thrown up their hands and so have I so I'm going to revoke your probation and I'm going to order you to serve the remainder of your sentence[s]."

Moreover, assuming the district court included Kafka's failure to make restitution payments and his receipt of additional civil judgments among its reasons for revoking his probation and the State failed to prove these violations, the district court still did not abuse its discretion because alternative grounds support the revocation of Kafka's probation. In fact, Scott's testimony clearly established by a preponderance of the evidence that Kafka violated the conditions of his probation in several respects, including failing to report, remaining unemployed, submitting positive UAs for methamphetamine, and failing to successfully complete his inpatient treatment program.

A district court does not abuse its discretion by relying on an unproven allegation as a basis to revoke probation if other violations provide a sufficient basis for revocation. Significantly, Kafka does not challenge the sufficiency of the evidence as to the other grounds determined by the district court. See *State v. Llamas*, 298 Kan. 246, 264, 311

8

P.3d 399 (2013) (a point raised incidentally in a brief and not argued therein is also deemed abandoned); *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013) (an issue not briefed by the appellant is deemed waived and abandoned); *State v. Ferguson*, 271 Kan. 613, 619, 23 P.3d 891 (2001) ("Clearly, we have alternate grounds to support the trial court's actions beyond mere nonpayment of restitution. The trial court did not abuse its discretion in revoking Ferguson's probation."); *State v. Luoma*, No. 102,183, 2010 WL 5185722, at *4 (Kan. App. 2010) (unpublished opinion) ("While the district court may not revoke probation because the defendant has committed a new offense unless that new offense is proved by a preponderance of the evidence, Luoma's alleged new offense was not the only basis for the revocation."), *rev. denied* 291 Kan. 916 (2011).

In conclusion, we find no abuse of discretion occurred because the district court did not premise its decision to revoke Kafka's probation upon his failure to make payments on his restitution obligations and his receipt of additional civil judgments. On the contrary, the district court found that Kafka failed to report, failed to obtain employment, failed to successfully complete treatment, and tested positive for using methamphetamine. Our review of the record convinces us there was more than a preponderance of evidence to support the district court's decision to revoke Kafka's probation.

REQUEST FOR REINSTATEMENT

For his second issue, Kafka contends the district court abused its discretion when it refused to reinstate his probation because the court "failed to properly consider [his] individual circumstances." Specifically, Kafka argues that no reasonable person would have adopted the view of the district court because he had been on probation for approximately 5 years without any major incidents and his recent failings were justifiable due to his health problems and drug addiction.

9

The numerous violations discussed earlier, however, support the district court's use of discretion in ordering that Kafka serve his sentences. Additionally, the individual in the best position to monitor and evaluate Kafka's performance on probation emphatically advised against reinstating Kafka's probation. Scott testified:

"A. . . . We have provided Mr. Kafka with options for groups and he has proven that he is not suitable for a group situation. The different groups that we have involved him in he continues to be a distraction in the group. He is not working the program and at this point I don't know what else we could offer him for this to be a successful situation for him. . . . .

"A. I do not believe Community Corrections is suitable for him. I don't really know of any other option at this point other than if he serves his time. He has proven that he is not willing to work the program up to this point."

While Kafka advanced several excuses for his behavior, the district judge specifically found that Scott's testimony was more credible and compelling than the testimony Kafka provided: "It's obvious to me that he hasn't and he can't [successfully complete his probation] and that I'm not very impressed with Mr. Kafka's testimony." When reviewing factual findings, appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility. *State v. Fulton*, 292 Kan. 642, 647, 256 P.3d 838 (2011).

Kafka's conduct demonstrates he was not amenable to probation; and under these circumstances, it cannot be said that no reasonable person would have ordered him to serve his underlying sentences. Accordingly, we find the district court acted within its discretion when it revoked Kafka's probation.

10

FAILURE TO COMPLY WITH GRADUATED SANCTIONS STATUTE

In the alternative, Kafka asserts that the district court erred when it ordered him to serve his underlying sentences because the court was required to either impose one of the intermediate sanctions set forth in K.S.A. 2013 Supp. 22-3716(c) or make particularized findings for bypassing the statutory graduated sanctions framework.

Effective July 1, 2013, the legislature limited a district court's discretion with respect to sanctioning an offender for a probation violation by enacting several amendments to K.S.A. 22-3716 (the probation violation sanctions statute) with the passage of House Bill 2170. See L. 2013, ch. 76, sec. 5. Compare K.S.A. 2012 Supp. 22-3716(b) with K.S.A. 2013 Supp. 22-3716(c). In general, K.S.A. 2013 Supp. 22-3716 instructs district courts to impose a series of graduated sanctions upon finding that an offender originally convicted of a felony has violated a condition of probation, assignment to community corrections, suspension of sentence, or another nonprison sanction. The sanctions range from continuation or modification of the offender's release conditions to brief periods of confinement in jail, which gradually increase depending upon the number of lesser sanctions already imposed. See K.S.A. 2013 Supp. 22-3716(c)(1)(A)-(D).

But consistent with this statutory framework, a district court still has discretion to bypass the intermediate sanctions and impose the offender's underlying prison sentence if the offender commits a new felony or misdemeanor or absconds from supervision. K.S.A. 2013 Supp. 22-3716(c)(8). Additionally, K.S.A. 2013 Supp. 22-3716(c)(9) authorizes district courts to circumvent the sanctions "if the court finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by such sanction."

Preliminarily, it is necessary to determine whether Kafka properly preserved this issue for appellate review. Both parties agree that at the probation revocation hearing neither Kafka nor his attorney requested the imposition of an intermediate sanction or mentioned K.S.A. 2013 Supp. 22-3716(c).

As a general rule, parties may not raise issues on appeal that they failed to raise in the district court. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). There are, however, several exceptions to this general rule, including: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the judgment of the district court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

When a litigant desires to obtain appellate review of a new legal theory, Kansas Supreme Court Rule 6.02(a)(5) (2015 Kan. Ct. R. Annot. 41) obligates the party to explain why the issue should be considered for the first time on appeal. As our Supreme Court cautioned in *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014), litigants who fail to comply with Supreme Court Rule 6.02(a)(5) risk a ruling that the issue has been waived or abandoned due to improper briefing. See *State v. Klima*, No. 110,660, 2014 WL 3843473, at *2-3 (Kan. App. 2014) (unpublished opinion) (declining to address Klima's challenge to the district court's failure to comply with K.S.A. 2013 Supp. 22-3716[c] because Klima ignored our Supreme Court's admonition in *Williams*, 298 Kan. at 1085, regarding the importance of Supreme Court Rule 6.02[a][5]), *rev. denied* 302 Kan. ___ (August 10, 2015).

As the State points out, while Kafka acknowledges his failure to raise the applicability of K.S.A. 2013 Supp. 22-3716(c) below, on appeal he does not argue that

12

any of the exceptions which would permit our review of this issue are applicable. Instead, Kafka characterizes this issue as an illegal sentence claim. This characterization is important to Kafka because under the statute governing illegal sentences, K.S.A. 22-3504(1), a court may correct an illegal sentence at any time. See *Williams*, 298 Kan. at 1077.

An illegal sentence, as contemplated by K.S.A. 22-3504(1), is a sentence imposed by a court without jurisdiction; a sentence that does not conform to applicable statutory provisions, either in the character or the term of authorized punishment; or a sentence that is ambiguous with respect to the time and manner in which it is to be served. *State v. Taylor*, 299 Kan. 5, 8, 319 P.3d 1256 (2014). Our Supreme Court has repeatedly held, however, that K.S.A. 22-3504(1) has rather limited applicability. *Makthepharak v. State*, 298 Kan. 573, 581, 314 P.3d 876 (2013). Whether a sentence is illegal is a question of law over which an appellate court exercises unlimited review. *Taylor*, 299 Kan. at 8.

Although Kafka claims this issue is appropriately brought as a claim of an illegal sentence, he does not explain how the district court's decision to impose his underlying sentences falls within the narrow definition of an illegal sentence, nor does he cite any relevant legal authority. These omissions are consequential. An appellant's failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. Importantly, issues an appellant fails to brief are generally deemed waived and abandoned. See *State v. Kingsley*, 299 Kan. 896, 900, 326 P.3d 1083 (2014); *Williams*, 298 Kan. at 1083-84. Because Kafka does not argue the applicability of K.S.A. 22-3504(1) to the district court's claimed error in failing to impose intermediate probation sanctions, we conclude this issue, presented as an illegal sentence claim, is waived and abandoned on appeal.

Apart from Kafka's failure to properly brief this issue, our court has previously addressed Kafka's legal contention and found the imposition of an underlying prison sentence without first implementing the graduated sanctions framework in K.S.A. 2013 Supp. 22-3716(c) does not constitute an illegal sentence. See *State v. Howell*, No. 111,746, 2015 WL 2414407, at *1-2 (Kan. App. 2015) (unpublished opinion), *rev. denied* 302 Kan. ___ (September 14, 2015); *State v. Lane*, No. 111,110, 2015 WL 802739, at *2-3 (Kan. App. 2015) (unpublished opinion); *State v. Brown*, No. 110,488, 2015 WL 326450, at *3-5 (Kan. App. 2015) (unpublished opinion), *rev. denied* 302 Kan. ___ (September 23, 2015).

*Howell* provides a persuasive rationale for declining to consider a district court's claimed failure to impose an intermediate sanction under K.S.A. 2013 Supp. 22-3716(c) as an illegal sentence claim. Like Kafka, Howell attempted to circumvent his failure to raise this probation revocation issue in the district court by citing K.S.A. 22-3504(1). Our court disagreed with the defendant's assertion that the district court imposed an illegal sentence:

> "We do not hold Howell's sentence to be illegal. It is unlikely noncompliance with the probation statute would fall under the 'very limited applicability' of K.S.A. 22-3504(1). [Citation omitted.] The Supreme Court specifically stated an illegal sentence for noncompliance with an applicable statutory provision applies only to 'the statute defining the crime and assigning the category of punishment to be imposed.' [Citation omitted.] Howell was convicted of burglary of a residence and sentenced properly under that statute; therefore, his sentence was not illegal, and this court has no illegal sentence to correct." 2015 WL 2414407, at *2.

We are persuaded that, in addition to the procedural bar discussed earlier, K.S.A. 22-3504(1) is not the appropriate statutory vehicle to address Kafka's claim that the district court erred in failing to impose one of the intermediate sanctions set forth in K.S.A. 2013 Supp. 22-3716(c) or in failing to make particularized findings for bypassing

the statutory graduated sanctions framework. For all of the reasons discussed, we decline to review this issue for the first time on appeal.

POSTRELEASE SUPERVISION

At the probation revocation hearing, the district court ordered Kafka to "serve the remainder of [his] sentence[s]." Although neither the district court nor the parties mentioned postrelease supervision at the hearing, the district court clarified this statement by imposing "[16] months in [case No. 08CR560G], 10 months in [case No. 08CR511G], and 9 months in [case No. 08CR60P]," with credit for 36 days served on case No. 08CR511G and 142 days on case No. 08CR60P.

On the written journal entries, however, the district court did not check the box which states: "No Postrelease Period to be served per K.S.A. 2012 Supp. 22-3716(e) (not applicable to crimes committed on or after July 1, 2013)." As a consequence, Kafka contends the district court imposed an illegal sentence because the court was statutorily obligated under K.S.A. 2012 Supp. 22-3716(e) to waive any postrelease supervision period.

We are persuaded that the journal entry does not properly memorialize the sentences imposed. While "'[a] journal entry that imposes a sentence at variance with that pronounced from the bench is erroneous and must be corrected to reflect the actual sentence imposed,'" it is unnecessary for us to remand this case for a nunc pro tunc order. See *State v. Waggoner*, 297 Kan. 94, 99-100, 298 P.3d 333 (2013). After the parties submitted their briefs, the district court filed corrected journal entries, which the State subsequently added to the record on appeal under Kansas Supreme Court Rule 3.02(d)(3) (2015 Kan. Ct. R. Annot. 20). Each corrected journal entry states: "[T]he journal entry should be modified to reflect that the defendant has **no postrelease period** to be served per K.S.A. 2012 Supp. 22-3716(e) because the defendant's crimes were committed prior

15

to July 1, 2013." Given the district court's filing of these corrected journal entries after Kafka raised this issue on appeal, no further relief is required.

Affirmed.